Syllabus.

JAMES A. OWNBEY, Defendant Below, Plaintiff in Error, *vs.* JOHN PIERPONT MORGAN, WILLIAM P. HAMILTON, HERBERT L. SATTERLEE, and LEWIS C. LEDYARD, as Executors of the Estate of John Pierpont Morgan, deceased.

1. APPEAL AND ERROR—SUPERSEDEAS BOND—AMOUNT—"CONDEMNATION MONEY."

Under *Const. art.* 4, § 27, providing that a supersedeas bond shall be sufficient to secure payment of "condemnation money," the quoted words mean amount of judgment below, where there is a general judgment that defendant must pay plaintiff a sum of money which is collectible from any property of defendant.

2. APPEAL AND ERROR—SUPERSEDEAS BOND—"SUFFICIENT SECURITY."

Under *Const. art.* 4, § 27, providing that a supersedeas bond shall be such as to furnish sufficient security to abide decree if there be no condemnation money, "sufficient security" in such case depends on the nature of the cause and the judgment or decree rendered.

3. COURTS—RULES OF COURT—APPEAL RECORD—VALIDITY.

A rule of the Supreme Court, though not requiring every supersedeas bond to be conditioned on payment of condemnation money, does not violate *Const. art.* 4, § 27, requiring that supersedeas bonds give sufficient security for payment of condemnation money or to abide decree.

4. APPEAL AND ERROR—SUPERSEDEAS—AMOUNT—ATTACHMENT SUIT.

Under *Const. art.* 4, § 27, providing that a supersedeas bond shall be sufficient to secure payment of condemnation money or to abide judgment, a bond given in an attachment suit against nonresident defendant in which judgment was collectible only from property attached was sufficient, though not based on amount of judgment.

5. APPEAL AND ERROR—ORDERS REVIEWABLE—FINAL JUDGMENT.

A writ of error cannot be taken until after a final judgment.

6. APPEAL AND ERROR—REVIEW—"FINAL DECISION."

A decision is "final" in the sense of being appealable when the successful party has obtained his rights either by direct operation of the decree itself or by means of proceedings of a ministerial character to enforce execution of it.

7. APPEAL AND ERROR—MATTERS REVIEWABLE—INTERLOCUTORY DECISIONS ON DISCRETIONARY MATTERS.

Interlocutory decisions of matters discretionary with the court are not reviewable by writ of error. *Rev. Code* 1915, §§ 4421–4424.

8. APPEAL AND ERROR—MATTERS REVIEWABLE—DENIAL OF RIGHT OF APPELLANT TO DEFEND.

An order striking off the appearance and pleas of defendant, plaintiff in error, and denying the right to defend without the entry of special bail, is reviewable after final judgment upon writ of error to the Superior Court. *Const. art.* 4, § 12, *par.* 1.

9. APPEAL AND ERROR—COURTS—RECORD—COURT RULES.

*Rule* 12, being a rule of the Court of Errors and Appeals, and also a rule of the Supreme Court, is authorized by *Rev. Code* 1915, § 3707, and provides for incorporation into the record of every matter or proceeding reviewable which is not, by virtue of *sections* 4438 and 4439, properly placed in the bill of exceptions.

10. APPEAL AND ERROR—RECORD—EVIDENCE OF MATTERS PASSED UPON.

It cannot be said that there is not in the record physical evidence of matters passed on by the Superior Court, where the record shows that on two occasions matters were certified to the court in banc for decisions, after which they were referred back.

11. COURTS—DELAWARE SUPERIOR COURT—COURT IN BANC—RULES OF DECISION.

The court in banc is a separate tribunal from the Superior Court, and in a sense an appellate court to which questions of law are sent by the Superior Court on its own motion, but its decisions do not bind the Supreme Court.

12. APPEAL AND ERROR—TRANSCRIPT—MOTION TO SET ASIDE—JUDGMENT BY DEFAULT.

A motion to set aside a judgment by default was properly included in a transcript, since it preceded the final judgment and was not in itself a final judgment.

13. APPEAL AND ERROR—TRANSCRIPT—MOTION TO REOPEN JUDGMENT.

A motion to reopen a judgment is not properly in a transcript upon writ of error, since it was made subsequent to the final judgment.

Heisel, J., dissenting.

(*June* 20, 1917.)

CURTIS, Chancellor, CONRAD, RICE, and HEISEL, Associate Judges, sitting; the Chancellor not sitting in the hearing on the merits.

*Ward, Gray and Neary* for the plaintiff in error.

*Saulsbury, Morris and Rodney* for defendants in error.

Supreme Court, on writ of error to Superior Court for New Castle County, No. 2 January Term, A. D. 1917. No. 46 January Term, A. D. 1916, below.

S. c. below, 6 *Boyce* 379, 100 *Atl.* 411.

ACTION OF FOREIGN ATTACHMENT by John Pierpont Morgan and others, as executors of the estate of John Pierpont Morgan deceased, against James A. Ownbey. Judgment for plaintiffs (6 *Boyce,* 379, 100 *Atl.* 411), and defendant brings error. Plaintiffs move that defendant, as plaintiff in error, be required to

give additional security in the supersedeas bond and to strike, out certain portions of the record. Motion for further security in supersedeas bond denied. Motion to strike denied, except that petition to open final judgment and proceedings relating thereto and bill of exceptions are ordered stricken from the transcript. On the merits, judgment affirmed.

This is a writ of error to the Superior Court in a foreign attachment action wherein the defendant below was denied by the court a right to appear and defend the action until he had dissolved the attachment of his property by giving security for an amount at least equal to the money claim made by the plaintiffs below.

The action below was an attachment against the defendant as a nonresident of the state of Delaware. This is a statutory proceeding pursuant to which the sheriff attached shares of stock of the Wooten Land and Fuel Company held or owned by the defendant, and a narr. was afterwards filed by the plaintiffs. Later counsel for the defendant, for the purpose of entering an appearance for the defendant, wrote their names in the usual way on the appearance docket, and the prothonotary received from them pleas. Thereupon the attorney for the plaintiffs filed a written motion asking that the appearance of the defendant's counsel and the entry made by the prothonotary be stricken out and that the pleas be stricken from the files. Counsel for the defendant then filed an answer to the plaintiffs' motion, claiming among other things, that a denial of the right to appear and defend without giving security for the discharge of the property attached violated rights of the defendant secured by the Constitution of the United States. This motion of the plaintiffs below to strike out the appearance was heard by the Court in Banc, and its opinion that the defendant could appear only by entering bail was certified to the Superior Court. 6 *Boyce*, 379, 383, 406, 407, 100 *Atl.* 411. Thereupon the Superior Court ordered that the attempted appearance for the defendant and the docket entries be stricken off. A judgment for the plaintiffs for want of an appearance for the defendant was then entered collectible only from the property attached, the amount of the

judgment to be ascertained by inquisition at bar. Thereupon the defendant filed a petition asking that the judgment be opened and that he be permitted to appear and defend. A rule issued on this petition and a motion of the plaintiffs to discharge the rule and strike off the petition to open the judgment was certified to the court in banc. The court in banc having heard the matter and having certified to the Superior Court their opinion, the rule was discharged.

An inquisition at bar by a jury was then had and the damages of the plaintiffs ascertained to be two hundred thousand, one hundred and sixty-eight dollars and fifty-seven cents, and a final judgment for that amount rendered. Thereupon the defendant filed a petition to open the judgment entered on the inquisition, and a rule for that purpose was obtained and a motion was made by the attorneys for the plaintiffs to discharge the rule and strike off the petition. These motions were certified to the Court in Banc, heard there and decided against the defendant, and the rule was discharged by the Superior Court pursuant to the opinion of the Court in Banc. An order was then made in the usual course that the attached property, shares of stock, be sold by the sheriff. Later a bill of exceptions containing all the foregoing matters was signed by the Chief Justice in the usual way.

` A writ of error was sued out in the Supreme Court by the defendant below and the following assignments of error were filed:

First. The court below erred in making its order of the fifth day of April, A. D. 1916, which after certain findings of fact, was as follows:

"It is ordered by the court that said attempted appearance of Ward, Gray and Neary, Esquires, for said defendant, and the said docket entries made by the prothonotary as aforesaid be stricken out and that said paper writings containing pretended pleas and reply to plaintiffs' motion marked 'Filed' by the prothonotary as aforesaid, be stricken from the files of this court; and

"It is further ordered that judgment for want of appearance, collectible only from the property attached, be entered in favor of the said plaintiffs and against the said defendant, and further that the amount of said judgment be ascertained by inquisition at bar."

—in that the statutes of the state of Delaware, in supposed conformity to which the said order was made, and the proceedings thereunder in said cause are in violation of the Constitution of the United States, and void, because:

1. Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the fourth article of the Constitution of the United States;

2. Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged, contrary to the Fourteenth Amendment to the Constitution of the United States;

3. Because the said Ownbey, was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey, was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States.

Second. The court below erred in the making of its said order of the fifth day of April, A. D. 1916, whereby it struck out of the record of said cause the appearance of the said James A. Ownbey, said defendant, by his attorneys and thereby prevented the said defendant from making his defense against the claims of the plaintiffs in said cause, and thereupon entered judgment for want of said appearance in favor of said plaintiffs and against the said defendant, in that the statutes of the state of Delaware, in supposed conformity to which the said order was made, and the proceedings thereunder in said cause are in violation of the Constitution of the United States, and void, because:

1. Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States;

2. Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged, contrary to the Fourteenth Amendment to the Constitution of the United States;

Assignment of Error.

3. Because the said Ownbey was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States.

Third. The court below erred in making its said order of the fifth day of April, A. D. 1916, whereby it struck out from the record of said cause the appearance of said defendant, by his attorneys, and struck from the files of said court the paper writings containing the pleas of said defendant to the merits of said cause which the defendant had filed in said cause, whereby the said court prevented the said James A. Ownbey, said defendant below, plaintiff in error, from defending against the claims of the plaintiffs below, defendants in error, and thereupon ordered judgment to be entered in supposed default of appearance in said cause by said defendant below, plaintiff in error, in favor of said plaintiffs below, and against said defendant below, in that the statutes of the state of Delaware, in supposed conformity to which the said order was made, and the proceedings thereunder in said cause are in violation of the Constitution of the United States, and void, because:

1. Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States;

2. Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged, contrary to the Fourteenth Amendment to the Constitution of the United States.

3. Because thereby the said Ownbey was and is deprived of his property without due process of law. contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States.

Fourth. The court below erred in making its said order of the fifth day of April, A. D. 1916, which, after certain findings of fact, was as follows:

"It is ordered by the court that the said attempted appearance of Ward, Gray and Neary, Esquires, for said defendant, and the said docket entries made by the prothonotary as aforesaid be stricken out and that said paper writings containing pretended pleas and reply to plaintiffs' motion marked 'Filed' by the prothonotary as aforesaid, be stricken from the files of this court; and

"It is further ordered that judgement for want of appearance, collectible only from the property attached, be entered in favor of the said plaintiffs and against the said defendant, and further that the amount of said judgment be ascertained by inquisition at bar."

—in that the statutes of the state of Delaware, in supposed conformity to which the proceedings in such cause were had and the said order was made, and under which statutes the plaintiffs, upon their own affidavit or upon the affidavit of some credible person in their behalf, alleging the indebtedness of the defendant below to plaintiffs' decedent in a sum of fifty dollars, were authorized to mark on the writ of attachment thereupon issued, and to fix the amount of bail required in said cause at the sum of two hundred thousand dollars, and thereupon to attach the property of said defendant below and prevent his entry of appearance in such attachment suit or the making of his defense therein to the claim of said plaintiffs, in default of the entry of said two hundred thousand dollars of bail in said cause, and thereupon to obtain interlocutory judgment, to ascertain the amount of such interlocutory judgment ex parte, and thereupon to obtain final judgment in such cause, and thereupon to obtain order of sale and make sale of the property so seized, all of which before the de-defendant below should have any opportunity to enter any appearance in said cause or make defense to the claim of said plaintiffs in error, in default of his ability to furnish said bail in the sum of two hundred thousand dollars, are against the common right of said defendant below and unconstitutional and void, because:

1.  Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States;

2.  Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged,

contrary to the Fourteenth Amendment to the Constitution of the United States;

3. Because the said Ownbey was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States.

Fifth. The court below erred in making its order of the twenty-ninth day of May, A. D. 1916, whereby it ordered that the rule be discharged which it had ordered to issue upon the petition and motion of the said James A. Ownbey, said defendant below, plaintiff in error, to show cause why the interlocutory judgment in favor of the said plaintiffs below and against the said defendant below, upon the supposed default of appearance by said defendant below in said cause, might not be opened and why he, the said defendant below, might not be permitted to appear in said court and disprove or avoid the debt or claim of the plaintiffs below in said cause, in that the said court did not exercise a just judicial discretion in the premises, which just judicial discretion would have led them to grant the prayer of said petition and motion of said defendant below.

Sixth. The court below erred in making its order of the twenty-ninth day of May, A. D. 1916, whereby it ordered that the rule be discharged which it had ordered to issue upon the petition and motion of the said James A. Ownbey, said defendant below, plaintiff in error, to show cause why the interlocutory judgment in favor of the said plaintiffs below and against the said defendant below upon the supposed default of appearance by said defendant below in said cause should not be opened, and why he, the said defendant below, should not be permitted to appear in said court and disprove or avoid the debt or claim of the plaintiffs below in said cause, in that the statutes of the state of Delaware and the proceedings thereunder, in supposed accordance with and upon which the said order was made, are against common right, in violation of the Constitution of the United States, and void, because:

1. Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States;

2. Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged, contrary to the Fourteenth Amendment to the Constitution of the United States;

3. Because the said Ownbey was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States.

Seventh. That the court below erred in making its order of the twenty-seventh day of November, A. D. 1916, that the rule be discharged which it had on the twenty-ninth day of May, A. D. 1916, issued, and to the plaintiffs below directed, upon the petition and motion of the said James A. Ownbey, said defendant below, to show cause why the final judgment entered in said cause might not be opened, why said defendant below might not be permitted to appear in said court and disprove or avoid the said debt or claim of said plaintiffs below, and also why said final judgment might not be vacated, in that the said court did not exercise a just judicial discretion in the premises, which just judicial discretion would have led them to grant the prayer of said petition and motion of the said defendant below.

Eighth. That the court below erred in making its order of the twenty-seventh day of November, A. D. 1916, that the rule be discharged which it had, on the twenty-ninth day of May, A. D. 1916, issued and to the plaintiffs below directed, upon the petition and motion of the said James A. Ownbey, the said defendant below, to show cause why the final judgment entered in said cause might not be opened, why said defendant below might not be permitted to appear in said court and disprove or avoid the said debt or claim of said plaintiffs below, and also why the said final judgment should not be vacated, in that the statutes

of the state of Delaware and the proceedings thereunder, in supposed accordance with and upon which the said order was made, are against common right, in violation of the Constitution of the United States, and void, because:

1.   Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States:

2.   Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged, contrary to the Fourteenth Amendment to the Constitution of the United States;

3.   Because the said Ownbey was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States;

4.   Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States.

Ninth.   The said court below erred in making its order of the twenty-seventh day of November, A. D. 1916, whereby it ordered and directed the shares of capital stock belonging to said defendant, of Wootten Land and Fuel Company, or so many thereof as should be sufficient to satisfy the debt, interest and costs of the judgment obtained upon the writ of foreign attachment in said cause, besold at public vendue to the highest bidder, upon such notice asis required for sales upon execution process, in that the statutes of the state of Delaware and the proceedings thereunder, in supposed conformity to which the said order was made, are against common right, in violation of the Constitution of the United States, and void, because:

1.   Thereby the said Ownbey, who was a citizen of the state of Colorado, was deprived of privileges and immunities of citizens of the several states, contrary to the second section of the Fourth Article of the Constitution of the United States;

2.   Because thereby the privileges and immunities of Ownbey, who was a citizen of the United States, were and are abridged,

contrary to the Fourteenth Amendment to the Constitution of the United States;

3. Because the said Ownbey was and is thereby deprived of his property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States; and

4. Because the said Ownbey was thereby denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States.

The transcript of the record contained not only the steps as above stated, but also the bill of exceptions. Since the filing in this court of the transcript of the record from the Superior Court the plaintiffs below, defendants in error, have made here two motions in the cause, first that the defendant below, plaintiff in error, be required to give additional security in the supersedeas bond, and second, to strike out certain portions of the record.

CURTIS, Ch., after stating the facts, delivered the opinion of the court:

The motions above referred to have been argued on briefs submitted, and the decision of them has no bearing on the merits of the questions raised by the writ of error.

[1-4] First, as to additional security. The motion for additional security is that the plaintiff in error be required to give to the defendants in error a bond for at least two hundred thousand dollars, in place of the bond for six thousand dollars, claiming that by the Constitution the plaintiff in error in order to stay proceedings below must give sufficient security to pay the judgment recovered below by the defendant in error which was two hundred thousand one hundred and sixty-eight dollars and fifty-seven cents, as the condemnation money.

By the Constitution a plaintiff in error or appellant, in order to stay proceedings in the court below pending the hearing of the case in the appellate tribunal must give sufficient security that he will (1) prosecute his writ of error or appeal, and if he fails in changing the decision of the court below, (2) will pay the condemnation money, if there be condemnation, or (3) if there be no

condemnation money will otherwise abide the decree appealed from, or abide the judgment claimed to be erroneous.

What is condemnation money is clear. It is the amount of the judgment below where there is a general judgment finding that the defendant must pay the plaintiff a sum of money, which is collectible from any property of the defendant that can be reached by the process of the law, whether the sum so found to be due is a debt or damages. Where the defendant below is not condemned by the judgment of the court below to pay money to the plaintiff below, as where there was a decree for specific performance, or a judgment in an ejectment suit, then the duty of the unsuccessful appellant is to perform the duty imposed by the decree or judgment below, and to abide thereby. If it was a decree for specific performance, then to abide is to do whatever was commanded, and for failure to do so the remedy was on the supersedeas bond, in addition to any other relief that the court below could give to secure enforcement of its decree. To meet this large class of remedies where there was no condemnation money the court said that the appellant must give sufficient security to abide, i. e., perform, the decree or judgment below.

The constitutional provision seems to me to be a very simple recognition by the makers of the Constitution of the variety of the relief granted to suitors, and that suitable language was used to distinguish between them in providing for protection pending appeal.

What is "sufficient security" within the provisions of the Constitution? That depends on the nature of the cause and the judgment or decree there rendered. If it is a general judgment for a sum of money, whether recovered as a debt or damages, to obtain which from the defendant the plaintiff may seize and sell all of the property of the defendant, then clearly the only security which will be sufficient to protect the plaintiff below pending the appeal will be a bond at least equal to the amount of the judgment and interest, and there must be such surety on the bond as will enable the plaintiff below to look entirely to the surety for protection. This is all clear.

But there are a great variety of reviewable adjudications, other than money judgments. There are appeals from decrees in chancery, requiring specific performance of a contract, injunctions preventive and mandatory, and the like where there is no direction to pay money, but to do or refrain from doing some act. There are replevin suits where the judgment is for a return of the property; ejectment suits to recover possession of land, where there is no money judgment and no order to pay money at all. There are criminal cases, mandamus, quo warranto, and other remedies afforded for legal rights where there is no order to pay money. In all of these cases what is the "sufficient security" which the party successful below needs pending the suspension of his rights to have the thing which the court below said he was entitled to have? There being no condemnation money in any of these cases, some other method of determining the sufficiency of security than a consideration of an amount of money which the court below awarded.

The rule of the Supreme Court was evidently intended to provide a guide to those who have the duty of fixing in particular cases what security would be sufficient. So the cases are arranged in the rule about as they are in the Constitution, viz. in two general classes; one where there was a judgment for the recovery of money, and those where there was not. It distinguishes, for instance, between a judgment on one hand and replevin or real actions. The rule does not violate the Constitution even if it does not require that every supersedeas bond shall be conditioned to pay condemnation money, for there are, as explained above, cases where there is no condemnation money. By the rule the Supreme Court has done no more than suggest to themselves principles applicable in determining what in each of the several classes of cases mentioned is sufficient security.

What is sufficient security for the plaintiffs below in the case at bar depends on the character of the right enforced and the relief given. They had an attachment of certain shares of stock which they had a right to sell in order to realize a sum of money found by the court below to be due them. They had no right to proceed against any other property to collect payment. They

had a lien on, or right in, that particular property which could not be dislodged in any way pending the appeal, and if the defendant below failed in his appeal their rights as against the property would be the same then as at the time they obtained judgment. To give the plaintiffs below sufficient security did not require that they be indemnified by a bond, the amount of which was based on the amount of money which they were entitled to recover by a sale of those shares of stock only, and with no right to reach any other property for that purpose, i. e., they were not entitled to a bond based on the amount of the judgment treating it as condemnation money. Yet such is the contention of the defendants in error in the motion for further security. As pointed out by counsel for the plaintiff in error, this would give the plaintiffs below more than they obtained by their attachment in the court below.

It is not claimed that since the bond was given there has been a change of circumstances which has diminished the security already given, nor indeed was any other matter urged except that the rule of court permitting security to be given for a less sum than that indicated by the sum of money awarded below violated the Constitution of the State.

The court is unanimously of the opinion that, for the reasons above stated, the rule of court is in harmony with the Constitution, and that the motion for further security should be denied.

[5] Secondly, the motion to strike out part of the matter in the transcript. The transcript contains all of the entries, written motions, decisions, orders and judgments which occurred in the course of the cause below as hereinabove referred to. The defendant in the court below was there denied a right to appear, plead and defend in the action because he did not give security as required by the statute, and the plaintiffs below recovered a judgment which entitled them to an order for the sale of the property attached. At several steps in the cause the defendant attempted to secure the rights to appear, plead and defend, each of which steps led up to the final decision of the cause, the entry of judgment, and it is not necessary at this time to consider the steps separately.

A writ of error cannot be taken until after final judgment. Finality of decision is essential to a right of review as a rule of convenience, to avoid delays from separate appeals of each of the steps in the cause as they occur. Therefore, the right to review these several steps is held in abeyance until the cause has reached a stage when all of the appealable steps can be reviewed in a single appeal involving the whole cause.

This general principle of appellate jurisdiction is so fundamental that it hardly needs the support of citation of authorities. But the following may be cited from states where it has been declared to be the law independent of statute: *Steenrod v. Wheeling, etc., Co.,* 25 *W. Va.* 133; *Lloyd v. Kyle,* 26 *W. Va.* 534; *Allerton v. Eldridge,* 56 *Iowa,* 709, 10 *N. W.* 252, and citing other cases in Iowa; *White v. Atchison, etc., Co.,* 74 *Kan.* 778, 88 *Pac.* 54, 11 *Ann. Cas.* 550; *Baker v. Baker,* 10 *Cal.* 527; *Nelson v. Brown,* 59 *Vt.* 600, 10 *Atl.* 721; *Comins v. Turner, etc., Co.,* 140 *Mass.* 146, 3 *N. E.* 304; *Morse v. Rankin,* 51 *Conn.* 326; *Emry v. Parker,* 111 *N. C.* 261, 16 *S. E.* 236; and many other cases cited in notes to 2 *Cyc.* 586, 2 *Ency. of Pleading & Practice,* 90; and 2 *Standard Ency. of Procedure,* 170. In 3 *Corpus Juris,* § 256, *p.* 432, and 4 *Corpus Juris,* § 2582, *p.* 680, there is a multitude of citations.

[6] The judgment entered below in this case is, of course, a final one. A decision is final in this sense when the successful party has obtained his rights either by the direct operation of the decree itself, or by means of proceedings of a ministerial character to enforce execution of it. As soon as the final judgment is entered, the unsuccessful party may then have reviewed all the successive steps in the cause which are reviewable by the appellate tribunal to which the whole record of the cause comes.

[7, 8] Consider what is reviewable, independent of the procedure for bringing the issues before the reviewing court. By the Constitution the Supreme Court has jurisdiction inter alia to issue writs of error to the Superior Court and to determine finally all matters in error in the judgments and proceedings of said Superior Court. *Article* 4, § 12, *par.* 1. This language is very broad.

There are few decisions in this state bearing materially on what is reviewable. In *Easton v. Jones*, 1 *Har*. 433, *note (a)*, *p*. 436, Chief Justice Harrington in the Superior Court considered that the craving by the defendant of oyer of a deed of which the plaintiff has made a proffert was "a kind of plea and may be counterpleaded, and the grant or refusal of oyer is a judgment of the court," and if oyer be refused a writ of error will lie to such refusal. By this the court meant that, when the record came up after the final judgment, the refusal of oyer was reviewable.

The Superior Court, after refusing judgment for the plaintiff notwithstanding an affidavit of demand, or after granting a judgment for the plaintiff notwithstanding an affidavit of defense, has said that an exception will not lie thereto, or that a writ of error will not lie thereto. In *Valley Paper Co. v. Smalley*, 2 *Marv*. 289, 295, 43 *Atl*. 176, the power to grant or deny such interlocutory motion was considered discretionary with the court. The court in *Ridings v. McMenamin*, 1 *Pennewill*, 15, 39 *Atl*. 463, refused to allow to the plaintiff an exception to its ruling denying a motion for judgment notwithstanding an affidavit of defense as not being a final judgment, the reason of the court being wrong, but the decision being right for a writ of error was not then opportune. No reason was given in *Montello v. Pullman, etc., Co.*, 4 *Pennewill*. 90, 54 *Atl*. 687, for refusing to a plaintiff an exception to a ruling by which a defendant was allowed to appear specially in a mechanics' lien case. The ruling could not have been reviewed at all until after the final judgment, and under some circumstances it may be discretionary with the court to allow a special appearance. A refusal of a motion for nonsuit is not reviewable. *May v. Curry*, 4 *Har*. 265 (*Court of Errors and Appeals*).

The case of *Whitaker v. Parker*, 2 *Har*. 413, was a suit on the bond of a collector of taxes, and there was a judgment against him and four sureties. The sureties obtained a rule to show cause why the judgment should not be set aside on the ground that it had been entered more than three years after the date of the bond. At the hearing of the rule, it was discharged by consent, the treasurer having agreed not to levy on the property of the sureties. The principal in the judgment took out a writ of error.

The Court of Errors and Appeals found no error either in the judg-
ment or in the order discharging the rule. It then said this with
respect to the order discharging the rule:

"But there is another question, whether a writ of error lies on the decision
of such a side bar motion, and of which we have doubts."

Clearly all that was meant was that the principal in the
judgment could not object to the agreement of the plaintiff in
the judgment not to levy on property of the sureties, as it did not
operate as a release, and therefore the court called it a "side bar"
motion, and did not intend to give any wider meaning even to the
quere, and the words were no more than a query.

In *Tatem v. Gilpin et al.*, 1 *Del. Ch.* 13, 21, the interlocutory
order for an injunction pendente lite was held immediately ap-
pealable under the Constitution then in force, because it changed the
physical conditions for the defendant, the right of the defendant to
flood land of the complainant by a dam being the issues in the cause.

From this review it will be seen that except in the case of
*Easton v. Jones, supra,* there is no help to be had from the decisions
here as to what of the intermediate steps and occurrences in the
progress of the cause are reviewable after final judgment. The
cited case supports the claim of the plaintiff in error here of a
right to have reviewed here the refusal of the court below to ap-
pear generally and plead to the action, for that refusal by preventing
the defendant from proving his defense of non assumpsit, was
more far-reaching than a refusal to permit a defendant to inspect
in advance of pleading to the action a deed which the plaintiff
declared to be in his possession. If the latter is not discretionary,
the former certainly is not.

There are certain statutes which define what are not review-
able, and what proceedings are amendable. In *chapter* 134 of the
*Revised Code, p.* 1978, §§ 2, 3, 4, and 5, the matters of error which
will not lead to a reversal of the judgment below are set out, such
as amendable defects; variance between the writ and the declara-
tion; error in the form of the action; death of a party between the
verdict and judgment. But they have no direct bearing on the
question here raised.

Aside from the reported cases in this state, the general principle is that interlocutory decisions of matters discretionary with the court are not reviewable. A granting or denying of a continuance is a typical example of the exercise of discretion.

Here the defendant claimed the right to appear and defend the action without the entry of special bail. For this purpose he entered a general appearance and filed pleas. These were stricken out by the court because special bail had not been given. Other steps were taken by the defendant to enable him to defend the action on its merits, but it is not necessary to refer to them in detail in considering this point, because the striking off of the general appearance and pleas of the defendant deprived him of opportunity to defend the action on the merits and allowed the plaintiff to obtain a final judgment, through the successive proceedings of a judgment by default and inquisition without a contest on the merits. Therefore, the order striking off the appearance and pleas determined the case so far as the defendant was concerned, though the plaintiff necessarily went on to obtain final decision of his rights. Such an order is reviewable in this, the appellate tribunal, which has been given jurisdiction to determine all errors in the judgments and proceedings of the court below. *Brumley v. Jessup & Moore Paper Co.*, 3 *Boyce* 544, 90 *Atl.* 83.

If any further authority is needed for the point, the following are found in the brief of the plaintiff in error:

In *Fuller v. Claflin*, 93 *U. S.* 14, 23 *L. Ed.* 785, an order striking out an answer was held to be appealable, as distinct from a refusal to strike out an answer. Obviously the former is not a mere procedure in the cause. "It is the ending of the cause, leaving the action undefended and with the right to immediate judgment." A similar consequence followed the denial of the plaintiff in error here to appear and answer.

In *Camden, etc., Co., v. Stuart*, 21 *N. J. Eq.* 484, an order striking out of a bill in equity matter on the ground of impertinence was held reviewable, for, said the court, "if relevant then unquestionably the striking out was a wrong affecting the rights of the appellant involved in the suit."

30 Del.]          OWNBEY vs. MORGAN'S EXECUTORS.          315

Opinion.

In *Henry v. Jeans*, 48 *Ohio St.* 443, 28 *N. E.* 672, the court held to be reviewable an order striking out and suppressing an answer:

"When the plaintiff in error was made party defendant, with leave to answer, he acquired substantial rights—the right of a litigant in the case—of which he was effectually deprived when his answer was suppressed. By the order striking his answer from the files, his right to try the issues it made was directly affected, and as to him, at least for the time being, the order determined the action and prevented the judgment he sought."

Inasmuch as the right to appear and defend without entry of special bail is the issue, and the refusal of the right is determinate of the cause so far as the defendant was concerned, the striking off of the appearance and the plea setting up the defense cannot prevent this court from reviewing that determinative action. Any other view would be to make a mockery of judicial proceedings, and outrage justice and right. By no stretch of the imagination can such a judicial order be considered discretionary, or within any of the classes of judicial decisions and actions which are not reviewable. It is, therefore, reviewable after the final judgment has been entered.

Furthermore, there are no cases which have been cited which controvert the view here taken.

[9] In this connection it is unimportant to consider whether the action of the court below was rightly in the record proper, or was brought here by means of the bill of exceptions. Cases elsewhere which hold that it should be in one or the other of them are, for the purpose of considering reviewability, uninstructive and indecisive, for they relate to the method of bringing into the appellate court the questions that are reviewable. The method proper for the purpose in this state will be considered hereinafter.

It is claimed by the defendant in error, in substance, that the various entries, motions, answers to motions, papers and decisions of the court respecting the right of the defendant below to appear and defend have no place in the record, and if they can be brought at all before this court for review it must be done by a bill of exceptions; that a bill of exceptions being unknown to the common law, existed only by statute; that the statute of Delaware related

only to matters which occurred at the trial and not to matters occurring in the cause prior thereto, and so did not justify the incorporation into a bill of exceptions any matter relating to the right of the defendant to appear and defend; and further that the existence of the Delaware statute supplanted the ancient more liberal Statute of Westminister. All these points may be conceded, though no opinion is, or need be, expressed on them, as general propositions.

We find that this court has by its rules provided for the incorporation into the record of this and every other cause every matter of proceeding reviewable here and which is not by virtue of the statute properly placed in the bill of exceptions. This is *Rule* 12, which is one of long standing, being one of the rules of the Court of Errors and Appeals, and has been and is one of those of the Supreme Court, substituted for the earlier court in name by the last constitutional change.

In the absence of statutory regulation the appellate tribunal may by general rules fix a procedure for bringing to it matter reviewable by it. There is no statute here, except the statute defining the scope and purpose of a bill of exceptions. *Sections* 4438 and 4439 of the *Revised Code* of 1915. On the other hand there is a statute giving widest powers to this court "to make rules and orders for the trial, hearing and determination of causes and proceedings in said court." *Section* 3707 of the *Revised Code* of 1915.

When a writ of error is sued out a plaintiff in error files his assignments of error, and the writ goes to the court below to send up the record so that the reviewable matters so pointed out as error in the assignments of error may be adjudicated. In the absence of a rule or statute and at common law the bare record, the writ, pleadings, verdict and judgment, were sent up. By the English statute other matters, such as errors in the charge of the court to the jury, could be sent up. In Delaware we have the statute as to the bill of exceptions, the scope and purpose of which is, in brief, to bring up the spoken words of the judge on the bench, or witness on the stand, and of which words there was no record and which had no physical existence. To ensure certitude

the judge who sat below by certifying the bill of exceptions officially informed this court of what was said in the court below. Evidently because there were other matters reviewable which were not within the common-law rule and the statute, *Rule* 12 was made to supplement them, and so ensure the litigants opportunity to have reviewed here every reviewable decision. Without the rule the record would be but the bare technical record referred to above. If there be a bill of exceptions, other things occurring at the trial could be brought here. Every other reviewable matter can be brought up by authority of *Rule* 12. There is, therefore, no conflict between the rules of law, statute, or rules of court, but on the contrary they supplement each other, and present a full, clear and complete procedure to bring up for correction every error in any judgment and proceeding in other courts of the State.

[10, 11] It cannot be said that there is not in the record physical evidence of the matters passed on by the Superior Court, because on two occasions the matters were certified to the Court in Banc for decision and after decision therein were referred back by that court to the Superior Court. The Court in Banc is a separate tribunal from the Superior Court, and in a sense an appellate court to which questions of law are sent by the Superior Court on its own motion. It is not the final court of review, and its decisions do not bind the Supreme Court.

When the prothonotary of the Superior Court is ordered to send up a record, then by *Rule* 12 of this court he is instructed that in making up the transcript of the record to be so transmitted he shall omit certain matters in the cause there, some being named specifically and some in general language. He omits, for instance, all writs for appearance where there has been an appearance; all entries of applications for continuances; and in general "all other merely incidential motions and rules made in the progress of the cause." The rule says, however, that these matters are to be omitted "unless  *  *  *  where some question may arise in regard thereto, reviewable by this court, then so much only of such matter or proceeding  *  *  *  as appertains to the decision or determination desired to be reviewed,

shall be incorporated in the transcript and no more; the intent
being to avoid incorporating in the transcript any other matter
or thing not material to the full and fair presentation of the
questions to be reviewed by this court." It will be observed that
all of the matters mentioned in the rule by special mention or
general description would be omitted from the common-law
record even in the absence of the above rule of court directing the
omission thereof. There is a special significance, therefore, to
the direction to include in the transcript every matter or thing
which even appertains to the decision or determination which the
plaintiff in error even desired to have reviewed, if the decision or
determination be reviewable. Broader language could not be
used to declare a liberal purpose to give widest opportunity to
obtain a review of every reviewable matter and insure that every
matter or thing material to a full and fair presentation to this
court of the things which the party defeated below desired to
have reviewed. In brief, it says omit this or that, but if there has
occurred in the course of the cause any matter or proceeding
reviewable by this court, which the plaintiff in error desires to
have reviewed, send up what you have which appertains to such
matter or proceedings. It required the prothonotary to send in
this case all the matters and things appertaining to the efforts
made by the defendant below to appear and defend the cause,
including entries of appearances, motions to strike out entries and
all the rest; for the defendant below desires to have reviewed here
the decision and determination by the court below against his
right to appear and defend the cause below; for as above pointed
out, that decision or determination is reviewable here.

[12] The motion to set aside the judgment by default was
properly included, for it preceded the final judgment, and was not
a final judgment. No execution could have been issued on it
until the amount of the damages had been sustained by verdict
and a judgment had been entered on the verdict.

[13] Among the matters included in the transcript was the
petition of the defendant made after the entry of the final judg-
ment, asking that it be opened and that he be permitted to appear
and disprove or avoid the claim of the plaintiff, and that the

judgment be vacated. Was this matter which occurred subsequent to the final judgment properly in the transcript? It occurred before the writ of error was taken, and it was in its nature reviewable by this court. Elsewhere it has been held that such a matter is not part of the common-law record proper unless it be preserved by a bill of exceptions. In other cases it is excluded from the appeal record because the writ of error is taken to the final judgment, and though all reviewable proceedings prior thereto are brought before the appellate tribunal those subsequent thereto are not. It seems to us that the motion to open the final judgment is not properly in the transcript.

The numerous authorities to support the contentions of the defendants in error, that pleadings stricken from the files are not part of the record proper, are not applicable in the face of *Rule 12*. It is, of course, within the power of this court to determine what should have been included in the transcript, and to strike out from it matters improperly included therein.

The unanimous conclusion of the court as to the first motion, viz., for further security in the supersedeas bond, is that it must be denied.

The conclusions of the majority of the court as to the second motion to strike out certain portions of the transcript of the record are:

(1)   That the petition to open the final judgment and the proceedings in relation thereto are not properly part of the transcript and should be stricken therefrom.

(2)   That the bill of exceptions was not properly included in the transcript of the record in the cause, and should be stricken therefrom and be deemed to be no part thereof.

(3)   That all the other portions of the transcript were properly incorporated therein and should not be stricken out.

HEISEL, J., (dissenting):—The question presented by the motion to strike from the record in this court the record of certain proceedings had in this case in the court below, with which I am unable to agree with the majority of the court, is whether or not the striking from the record by the Superior Court the appearance

of the defendant and the pleas filed by him in a foreign attachment proceeding, under our statute, without entering bail as required by statute, is reviewable in this court.

When a writ of error issues from this court to the Superior Court, the questions that can be determined must be such as appear upon the face of a transcript of the proper record of that court, or such points of law arising in the course of the trial, material to the determination thereof, which, under our statutes may be included in a bill of exceptions. From these two sources must arise all reviewable questions.

I agree with the majority of the court that the bill of exceptions, under the statutory provisions relating thereto in this state, was not properly included in the record and should be stricken therefrom. Therefore if the action of the Superior Court in striking off the appearance of the defendant and the pleas filed by him is reviewable by this court, it must be as part of the record proper. At common law the record proper consists of the process, pleadings, verdict and judgment, and pleas stricken from the record are no part of it. The authorities on this point are practically unanimous.

If therefore, in the case at bar, the pleas stricken from the record by the Superior Court are to be a part of the record proper and, as such, reviewable by this court, we must find the authority for so holding, within the statute, because at common law, it was not any part of such record, and without bill of exceptions, it was not reviewable.

I find nothing in the Constitution, statutes, rules of court, or decided cases of this state, declaring or defining the proper record of an inferior court to be sent to this court, on writ of error, to be in any way different from the common-law rule in that respect. Certainly the Constitution and statutes make no such provision.

As to *Rule* 12 I am unable to see how it gives any assistance whatever in determining this matter.

The rule is as follows:

"In making up the transcript of the record to be transmitted to this court, the prothonotary or clerk of the court below shall omit from such transcript the formal heading and commencement of the record, stating

only the title of the cause, and the time of the commencement of the suit or proceedings; he shall also omit all writs, or original process for appearance, where the party has appeared; all entries of continuances and imparlances; all entries of motions and rules to declare or plead; all entries of applications for continuances, for commissions, or for warrants of resurvey, and the affidavits in support thereof, together with the ruling of the court on such application; all entries of motions on rules for security for costs, together with the proceedings and rulings thereon; all entries of impaneling, swearing and names of jurors, and all other merely incidental motions and rules made in the progress of the cause; all pleadings withdrawn, waived or superseded by amendment; all commissions to take testimony and the formal returns thereto, and all warrants of resurvey, stating the time of issue and return of such warrant; all replevin, retorno habendo, and appeal bonds, and affidavits; all formal entries for motions for new trials, and the rulings thereon, together with the affidavits and other evidence used on such motions, stating in lieu thereof the fact of such motion being made, and how disposed of by the court; unless, where any of the foregoing matters or proceedings may be used as evidence in the cause, or where some question may arise in regard thereto, reviewable by this court, then, so much only of any such matter or proceedings as may be used in evidence, or as appertains to the decision or determination desired to be reviewed, shall be incorporated in the transcript, and no more; the intent being to avoid incorporating in the transcript any matter or thing not material to the full and fair presentation of the questions to be reviewed by this court."

Briefly this rule is nothing more than directions to the prothonotary as to what shall be omitted from the transcript of the record as shown by the files of the case in his office, and does not attempt to distinguish those things in the files that are reviewable from those that are not reviewable. As the rule states:

"The intent being to avoid incorporating in the transcript any matter or thing not material to the full and fair presentation of the questions to be reviewed by this court."

The object of this rule becomes more apparent when we remember that under the old rules the prothonotary, when making up his record for this court under the writ, had before him the assignment of errors, whereby he would be advised of the questions to be raised, and therefore of the necessity of setting out in full those parts of the proceedings mentioned in the rule which ordinarily under the rule would be omitted, even though reviewable, so that the record would not be encumbered with immaterial matter.

The assignment of errors might consist of errors in the record proper of the case, or such as could be raised only by bill of exceptions, therefore the rule provided that the matters mentioned

in the rule, although in the files of the prothonotary, should be omitted from the record unless they had been used as evidence and therefore could be brought into the record by bill of exceptions, or unless they were reviewable as part of the record proper.

The case of *Easton v. Jones*, 1 *Har.* 433, *note a*, was in the Supreme Court on writ of error issued after judgment on demurrer to certain pleas. The questions involved were, which party is bound to set out an instrument after oyer, and whether the grant of oyer makes the deed a part of the record.

The court decided that the mere craving of oyer, though granted, does not make a deed part of the record. And while considering that question said: .

"The craving of oyer is a kind of plea and may be counterpleaded, and the grant or refusal of oyer is a judgment of the court. If the court refuse oyer when it ought to be granted, a writ of error will lie."

Clearly all the court meant was that the judgment of the court on such a pleading was a final judgment like a judgment on a demurrer to a plea, which it was then considering, and that a writ of error would lie; not after further pleadings and a trial and final judgment on the trial as suggested by the Chancellor, but immediately, and in like manner that the writ would issue after judgment on demurrer to pleadings. All of which was the usual common-law procedure on common-law pleading and in no way suggested a departure from the common-law rule governing what constitutes the record on writ of error.

The whole difficulty, it seems to me, grows out of an attempt to review certain steps in an unusual statutory remedy by means of common-law rules which do not meet the requirements.

I am therefore of the opinion, that the action of the Superior Court in striking off the appearance and pleas is no part of the record proper of the case here and should be stricken from the record.

### On the Merits.

The merits of the questions raised by the foregoing assignments of error were afterwards heard by CONRAD, RICE, and HEISEL, Associate Judges (the CHANCELLOR not sitting), and the court handed down the following:

PER CURIAM: In this case there are nine assignments of error filed by the defendant below, appellant in error. Voluminous briefs were filed and able and exhaustive arguments were made by counsel representing both parties to the action. However, as the judges comprising the Supreme Court at the time of the argument were also members of the Court in Banc at the time that court heard and determined the same questions raised by the assignments of error, and also in view of the fact that the same questions cannot arise in the future for the reason that by recent legislation defendants in foreign attachment cases are permitted to appear without first giving bail, we will not state reasons for our decision in this court, our conclusions being the same as they were in Banc. the time the case was argued and determined by the Court.

Without stating the numerous questions of law raised by the assignments of error and decided by the court below, we are of the opinion that the judgment of the court below should be and it is hereby affirmed.