THEODORE F. TRAVERS, trading as Delaware Trucking Company, v. ARTIC ROOFING INC.

(*June* 1, 1942.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*W. Thomas Knowles* (of Knowles and Knowles) for the plaintiff.

*Aaron Finger* (of Richards, Layton and Finger) for the defendant.

Superior Court for New Castle County, March Term, 1942.

LAYTON, Chief Justice:

The plaintiff, a common carrier of freight under the Federal Motor Carrier Act of 1935, 49 U. S. C. A., § 301 *et seq.*, sued to recover from the defendant the difference between the amount due for interstate hauling under his duly filed tariff schedules and the amount actually paid to him by the defendant under its contract of carriage. The declaration alleged that the haulage at the legal rate amounted to $7,025.00; and that the defendant, in violation of Title 49 *U. S. C. A.* § 316, Subd. (d) and Subd. (b) under § 317, paid only the sum of $3,421.57; and that there was due and owing the sum of $3,603.91.

The defendant filed, inter alia, a special plea to which the plaintiff demurred. Briefly the facts averred were these: that the tariffs referred to in the declaration were technical in nature and difficult to understand by one not an expert in such matters; that the tariffs were filed only at the offices of the Interstate Commerce Commission in Philadelphia and Washington; that the examination of the tariffs has to be made in person for the reason that information as to the plaintiff's rates could not have been obtained by the defendant through ordinary communication with the offices of the Commission; that the defendant was able to have the hauling of its goods between Gloucester, New Jersey and Edge Moor, Delaware, either by motor carrier or by rail, at the rate of ten cents the hundred weight, and was having such hauling done by motor carrier at that rate; that the plaintiff solicited the defendant's business, and having been informed of the rate which the defendant was enjoying, knowingly and falsely, represented to the defendant that he was also operating under a duly filed tariff which

authorized him to do such hauling at the ten cent rate; that relying on and induced by this false representation the defendant made no inspection of the plaintiff's tariffs, and allowed the plaintiff to do the hauling referred to in the declaration and bill of particulars, which otherwise it would not have done; and that the defendant paid promptly all of the bills rendered by the plaintiff for hauling at the ten cent rate, and no demand was made for any other or additional payment for any of the items stated in the plaintiff's bill of particulars until long afterwards. Notice of recoupment of damages was given.

The defendant's argument in support of its plea, as applied ordinarily, is sound. A claim for damages resulting from fraud may be asserted by a defendant to an action on the contract by way of recoupment. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 4 *W. W. Harr.* (34 *Del.*) 435, 460, 154 A. 883, 894. Where the fact misrepresented by one party to a contract is peculiarly within his knowledge, the other party being ignorant, the fact that the truth appears in the public records does not defeat the aggrieved party's right of action; especially where the representation induced the failure to examine the records. 23 *Am. Jur.* 972, 26 C. J. 1155; *Loverin v. Kuhne,* 94 *Conn.* 219, 108 A. 554, 33 A. L. R. 848; and, it is elementary that fraud in the inception of a contract renders it void.

But the concern here is with a drastic public policy declared by the Motor Carrier Act which, generally, prohibits undue preferences and unjust discriminations, and, specifically, provides that no common carrier shall charge or receive a greater, less or different compensation for transportation than the rates and charges stated in the tariff schedule in effect at the time, and forbids the carrier to refund or remit in any manner or by any device, directly or indirectly, any of the stated rates or charges. The purpose and effect of this Act is not different from that of the Inter-

state Commerce Act, 49 U. S. C. A. § 1 *et seq.*, and the decisions under the latter Act are applicable.

The public policy declared as well by the Motor · Carrier Act as by the Interstate Commerce Act overrides all agreements and understandings between shipper and carrier in violation of established rates. The contract is no longer a contract as to rates, for the charge is that established by the carrier's schedule; it is merely a contract that the carrier will render the transportation service at its established rate. *McFadden v. Alabama, etc., R. Co.*, (3 *Cir.*) 241 F. 562, 563; *Atlantic C. L. R. Co. v. Bristol S. & I. Works*, (*D. C.*) 30 *F. Supp.* 726. While a rate different from the established rate is void, the transportation is not wrongful, and the legal charge therefor is a proper subject matter of an action in the Courts. *Georgia R. R. v. Creety*, 5 *Ga. App.* 424, 63 S. E. 528. Difficulty in understanding public and accessible tariff schedules is of no avail to the shipper. *Chicago & Alton R. Co. v. Kirby*, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501. All rebates from tariff schedules, whether voluntary or involuntary, are viewed with disapproval. *Lowden et al. v. Simonds-Shields-Lonsdale Grain Co.*, 306 U. S. 516, 59 S. Ct. 612, 83 L. Ed. 953.

The defendant cites and relies upon *St. Louis Southwestern R. Co. v. Lewellen Bros.*, (5 *Cir.*) 192 F. 540, certiorari denied 225 U. S. 701, 32 S. Ct. 835, 56 L. Ed. 1264. There the carrier had an established rate on the shipment of cattle from a point in Texas to a point in Oklahoma, but failed to post the schedule at its Texas Station, as required by law. As a result, through error, the carrier's agent at the point of shipment gave the shippers a rate lower than the established rate. At destination, however, the error was discovered, and the carrier's agent compelled the shippers to pay the established rate which was higher than a competitive rate from a nearby point in Texas to the place of desti-

nation. The shippers, under Section 8 of the Interstate Commerce Act, 49 U. S. C. A. § 8, making common carriers liable for full damage to any person injured as a consequence of any violation of the Act, sued to recover its damages thus proximately resulting from the failure of the carrier to post its schedule of rates. The Circuit Court of Appeals, in affirming a judgment below in favor of the shippers, reasoned that the shippers could have used a competitive line at a much lower rate, and would have done so but for the negligence accompanied by the false representation of the carrier's agent; and that it followed from the letter and spirit of Section 8 of the Act that the carrier should pay the damages sustained by the shippers although the indirect result was a quasi rebate from the carrier's established rate. *Texas & Pacific R. Co. v. Cisco Oil Mill*, 204 U. S. 449, 27 S. Ct. 358, 51 L. Ed. 562, was cited, where the Supreme Court said expressly that it was not called upon to decide whether a shipper would be entitled to recover damage resulting from the carrier's failure to post its established schedule; and the Court observed that up to the time of that decision (February 25, 1907) the Supreme Court had not decided the question.

In 1913, however, the Supreme Court, in *Illinois Central R. Co. v. Henderson Elevator Co.*, 226 U. S. 441, 33 S. Ct. 176, 57 L. Ed. 290, found it necessary to reverse a decision of the Kentucky Court of Appeals in these circumstances: Henderson Elevator Company had in mind to sell corn to be delivered in New Orleans, and it was necessary for it to ascertain the shipping rate. The carrier had furnished the company with a copy of its rates, from which it appeared that the rate on corn was ten cents the hundred pounds. It was assured at the carrier's office in Henderson, Kentucky, that this rate had not been changed. No other rate had been posted at the office. The files were examined to ascertain whether another rate had been furnished but not posted. None

was found. Further, inquiry was made of the carrier's proper authorities, and the ten cent rate was confirmed. Upon this understanding the corn was sold, and the carrier's local agent agreed to transport it at the ten cent rate. Later the appellee was notified by the carrier that a rate of 13½ cents the hundred pounds had been established some months before, and it was compelled to pay the increased rate. In this situation the Court of Appeals sustained a judgment for damages rendered in favor of the shipper, 138 Ky. 220, 127 S. W. 779. The Supreme Court held, however, that an erroneous quotation by the carrier's agent of a rate lower than the established rate gave no right of action for damage thereby sustained even though the tariff was not posted or on file in the carrier's local station. *St. Louis Southwestern R. Co. v. Lewellen Bros., supra,* has, as it seems, been tacitly repudiated. See *Central of Georgia R. Co. v. Birmingham Sand & Brick Co.,* 9 Ala. App. 419, 64 So. 202.

The defendant's equity, as shown by its plea, is strong. But where the suit is by a common carrier to collect from a shipper the amount due for the service rendered under the carrier's established rate, equitable principles are in abeyance. In such case, it is not a question of purpose or intent, innocent or fraudulent, or of mutual mistake, or of mistake of one acted on in good faith by another. The shipper is presumed to know the legal rate; and the public policy, as declared by the Act, is of such rigidity as to deny to the shipper a counter claim for damages resulting from a misrepresentation of rates by the carrier.

The demurrer to the plea is sustained.