ARTIC ROOFINGS, INC., a Corporation of the State of Delaware, Defendant Below, Plaintiff-in-Error, v. THEODORE F. TRAVERS, Trading as Delaware Trucking Company, Plaintiff Below, Defendant-in-Error.

(*June* 3, 1943.)

HARRINGTON, Chancellor, RICHARDS and TERRY, J. J., sitting.

*Aaron Finger* (of Richards, Layton and Finger) for Artic Roofings, Inc., the Defendant Below, Plaintiff-in-Error.

*W. Thomas Knowles* for Theodore F. Travers, Trading as Delaware Trucking Company, the Plaintiff Below, Defendant-in-Error.

Supreme Court, No. 3, September Session, 1942.

HARRINGTON, Ch., delivering the opinion of the Court:

The motion of Theodore F. Travers to dismiss the writ of error is denied. Conceding that the validity of the judgment, entered by the Court below on demurrer to the plea of Artic Roofings, Inc., could be questioned by that writ at a later stage of the case (*Empire Box Corp. v. Jefferson Island Salt Min. Co., 3 Terry* (42 *Del.*) 258, 31 A. 2d 240), it does not follow that it cannot be questioned at this stage, before trial and the final determination of the case. The plea filed, and held bad, involved material questions of law and fact, and the pleader did not exercise its statutory right to request the entry of judgment of respondeat ouster when the demurrer thereto was sustained. On the contrary, it elected to have a judgment entered against it on the issue raised by the demurrer. That was a final judgment, subject to a writ of error, at common law, and, also, under the provisions of Section 12, Article IV of the Constitution of 1897. *Empire Box Corp. v. Jefferson Island Salt Min. Co., supra; Easton v. Jones*, 1 Harr. 433, note; *Woolley's Del. Pr.*, §§ 459, 460. See,

also, *Electrical Research Products, Inc., v. Vitaphone Corp.,* 20 Del. Ch. 417, 171 A. 738. Moreover, there are cases in the records where that practice has been followed; *Stucker v. American Stores Co.,* 5 W. W. Harr. (35 *Del.*) 594, 171 A. 230, is one of them. Neither *Ownbey v. Morgan's Ex'rs,* 7 Boyce 297, 105 A. 838, nor *Norfolk Lumber Co. v. Simmons,* 2 *Marv.* 317, 43 A. 163, is inconsistent with this conclusion.

In and after the month of March, 1939, Theodore F. Travers, trading as Delaware Trucking Company, the plaintiff below, was a common carrier of freight, engaged in interstate hauling by trucks, under the Federal Motor Carrier Act of 1935 (Section 316(d), and Section 317(b), 49 U. S. C. A., and his schedule of tariff rates had been duly approved and filed, pursuant to its provisions. At various times, between March 31st, 1939, and February 28th, 1940, Travers transported certain merchandise for Artic Roofings, Inc., from Gloucester, New Jersey, to Edge Moor, Delaware, and was paid $3,421.57 therefor. According to the schedules filed, the freight charges should have been $7,025.48; measured thereby, the balance due and unpaid was, therefore, $3,603.91, and the carrier ultimately sought to recover that amount, with interest, in the Superior Court. But, by a special plea filed to the plaintiff's declaration, Artic Roofings, Inc., the shipper, alleged facts, in considerable detail, from which it appeared that it was ignorant of the freight rates in the schedules filed by Travers, and that the shipments made were induced by his false and fraudulent representations that he was operating under a schedule which permitted him to transport the particular merchandise at the rate of 10c per hundredweight; and that was charged and paid during the whole transportation period, of approximately eleven months. The plea, also, alleged that, but for the false and fraudulent representations of Travers, the shipper both "could and would have had the said merchandise transported by another carrier either by motor vehicle

or by rail at said 10c rate * * *". Other and less important facts were likewise alleged: that the shipper did not examine the schedules of rates filed by Travers because of his statement with respect to their contents; furthermore, that such schedules were not on'y difficult to understand, but were filed only in the offices of the Interstate Commerce Commission in Philadelphia, Pennsylvania and in Washington, D. C., and were not conveniently accessible to a shipper doing business elsewhere. The purpose of the plea was to assert the damages alleged to have been suffered by the shipper, the defendant in the Court below, by way of counterclaim to the plaintiff's demand, and a notice of recoupment, alleging the amount of such damages, was attached thereto. The plaintiff's demurrer in the Court below admitted all of the facts a'leged. Moreover, it is not denied that all of the essential elements of actionable fraud appeared; but the materiality of these allegations is questioned.

The controversy is based on the purpose and scope of the Federal Motor Carrier Act of 1935. Section 317 (b) 49 U. S. C. A. is the important one, and provides:

"No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportaticn in interstate or foreign commerce except such as are specified in its tariffs * * *".

These provisions are followed by a proviso: "That the provisions of sections 1(7) and 22 of this tit'e shall apply to common carriers by motor vehicles subject to this chapter."

Section 22, which is the important section, provides: "and nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

 In the absence of some unusual circumstances, a claim for damages, resulting from fraud on the part of the plaintiff, in inducing a contract sued on, may be asserted by the defendant, by way of counterclaim and recoupment in the same action. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 4 W. W. Harr. (34 Del.) 435, 154 A. 883, affirmed on Writ of Error, *Phoenix Oil Co. v. Mackenzie Oil Co.,* 4 W. W. Harr. (34 Del.) 460, 154 A. 894. In such cases, the plea and notice of recoupment set up a counterclaim "in the nature of a cross action sounding in tort;" and the rights sought to be asserted will be litigated in that manner in order to prevent a multiplicity of suits. *Id.* The general Federal rule, applicable to remedies, is no less liberal. It usually permits a shipper to assert his right to damages, suffered in transit by the negligence of the carrier, by counterclaim in an action by the latter for unpaid freight. *Chicago & N. W. R. Co. v. Lindell,* 281 U. S. 14, 50 S. Ct. 200, 74 L. Ed. 670. Furthermore, when the fact fraudulently misrepresented by one party to a contract is peculiarly within his knowledge, the other party being ignorant thereof, the fact that the truth appears in the public records does not usually defeat the right of action of the aggrieved party, when the representation made induced the failure to examine the record. Both of these principles were conceded by the Court below (*Travers etc. v. Artic Roofing, Inc.,* 3 Terry (42 Del.) 41, 27 A. 2d 78) ; but, notwithstanding the admitted fraud of the carrier, the intended purpose and scope of the Federal Motor Carrier Act, 49 U. S. C. A., § 301 et seq., will not permit the application of these general principles. The shipper's claim that it has rights that can be asserted by a plea of recoupment is, necessarily, based on the premise that it could recover

damages for false and fraudulent representations in a separate tort action; but that right cannot be conceded. 13 C. J. S., Carriers, §·394, p. 877. It was abrogated by the statute which provides that no common carrier by motor vehicle "shall charge or demand or collect or receive a greater or less * * * compensation for transportation * * * than the rates * * * and charges specified in the tariffs in effect at the time"; and any indirect methods of evasion are expressly prohibited. These statutory provisions are strikingly similar to those of the Interstate Commerce Act, and cases construing the latter are applicable. The Motor Carrier Act was based on sound reasons of policy, for the general public good, and was intended to prevent direct or indirect discriminations in transportation rates; when an interstate carrier operates under it, he has no liberty of choice in fixing charges by a special contract with the shipper. *Cooney Co. v. Arlington Hotel Co.,* 11 Del. Ch. 137, 98 A. 186; *Kansas City So. R. Co. v. Carl,* 227 U. S. 639, 33 S. Ct. 391, 57 L. Ed. 683. Whatever representations may. be made by him, the rates prescribed by the schedules filed govern both parties; when the relation of shipper and carrier exists, there is both a right and a duty to collect the scheduled charges. *Cooney v. Arlington Hotel, supra; Kansas City So. R. Co. v. Carl, supra; New York, N. H. & H. R. Co. v. York & Whitney Co.,* 215 Mass. 36, 102 N. E. 366; 13 C. J. S., Carriers, § 393, pp. 873, 875.

The Act being primarily for the public good, the principles of estoppel will not defeat the carrier's rights, though he unintentionally misquoted the scheduled rate to the shipper before the delivery of the goods for transportation and material losses were caused thereby. *Pittsburgh, C., C. & St. L. R. Co. v. Fink,* 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151; *New York, N. H. etc, R. Co. v York & Whitney Co., supra;* 13 C. J. S., Carriers, § 393, p. 874. Nor can there be any real distinction between a mere unintentional misrepresentation and a fraudulent misrepresentation by the

carrier. *Kansas City So. R. Co. v. Carl, supra.* In either case, the usual common law rights of the individual shipper are subordinated to the statutory requirement of uniformity in rates; and while there may be cases of hardship, the general legislative policy, declared by the Act, controls. *Pittsburgh, C., C. & St. L. R. Co. v. Fink, supra;* see, also, *Western Union Tel. Co. v. Esteve Bros. & Co.*, 256 U. S. 566, 573, 41 S. Ct. 584, 65 L. Ed. 1094. The proviso of the Motor Carrier Act was not intended to preserve common law rights and remedies, wholly inconsistent with and repugnant to, its purpose. *Chicago & N. W. R. Co. v. Lindell*, 281 U. S. 14, 50 S. Ct. 200, 74 L. Ed. 670; *Pennsylvania R. Co. v. Puritan Coal Mining Co*, 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867; *Hewitt v. New York, etc., R. Co.*, 284 N. Y. 117, 29 N. E. 641. Conceding that, under its provisions, damages to goods by the negligence of the carrier, while in transit, can be recovered by the shipper, either in a direct action or by way of counterclaim and recoupment in a suit for unpaid freight (*Pennsylvania R. Co. v. Puritan Coal Mining Co., supra; Chicago & N. W. R. Co. v. Lindell, supra*) ; and that other common law rights against the carrier are, also, preserved (*Pennsylvania R. Co. v. Puritan Coal Mining Co., supra; Eastern R. Co. v. Littlefield*, 237 U. S. 140, 35 S. Ct. 489, 59 L. Ed. 878; *Illinois Cent. R. Co. v. Mulberry Hill Coal Co.*, 238 U. S. 275, 35 S. Ct. 760, 59 L. Ed. 1306), that principle does not govern this case.

The judgment of the Court below is affirmed.