CENTRAL OF GEORGIA RY. CO. v. BLOUNT et al.

(Circuit Court of Appeals, Fifth Circuit. January 8, 1917.)

No. 2954.

1. LANDLORD AND TENANT ☞39—LEASE—CONSIDERATION.

Where an interstate carrier leased to a manufacturer of wagons and buggies a site for his factory which was worth more than $5,000, and had a rental value of $300, for a term of 20 years, with an option for renewal, by a lease which reserved no rent, but provided that the tenant should save the lessor harmless from liability, caused or increased by the tenant's use of the premises, and should furnish, free of expense to the lessor, a lease for the right of way for a spur track from the lessor's line to the factory, which the lessor could use for its own purposes when it was not required for the use of the tenant, and further provided that the tenant would not assign the lease, except to another manufacturer which shipped approximately the same amount of freight, and so far as it could would bill all freight shipped to it and all shipped out by it over the lessor's lines, the consideration for the lease was clearly the business which the carrier expected to derive from the tenant, not the other agreements which the tenant undertook to perform, which were mere incidents of the tenancy.

[Ed. Note.—For other cases, see Landord and Tenant, Cent. Dig. §§ 101–103; Dec. Dig. ☞39.]

2. CARRIERS ☞32(2)—RATES—DISCRIMINATION—FREE LEASE OF FACTORY SITE.

Such a lease conferred on the tenant, as shipper, a bonus or benefit which the carrier could not confer on other shippers of like articles, and was therefore illegal under section 2 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. 1913, § 8564]), making the carrier guilty of unjust discrimination if by any rebate or other device it charges one person less for any services rendered in the transportation of the property than it does others for a like service, and the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847), making it an offense to give or receive any rebate, concession, or discrimination in respect to the transportation of property whereby it shall be transported for less than that mentioned in the published tariff, or whereby other advantage is given or discrimination practiced.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. ☞32(2).]

3. ESTOPPEL ☞52—ILLEGAL TRANSACTION.

A party to a transaction prohibited and penalized by law cannot estop himself from setting up its invalidity.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. ☞52.]

Appeal from the District Court of the United States for the Northern District of Georgia; Wm. T. Newman, Judge.

Suit by the Central of Georgia Railway Company against B. M. Blount and another. From a decree sustaining defendants' motion to dismiss the bill, plaintiff appeals. Reversed.

This is a suit in equity, brought by the appellant, Central of Georgia Railway Company, against the appellees, B. M. Blount and Blount Buggy & Carriage Company, a corporation. The following is a summary of the averments of the bill:

The plaintiff is a common carrier engaged in interstate commerce and in intrastate commerce in Georgia. The defendant corporation is engaged in

the manufacture of wagons, buggies, etc., having its plant on the line of the plaintiff's road at or near the town of East Point, Ga., and both the defendants receive over the plaintiff's road large shipments of material from within and without the state of Georgia, and are constantly engaged in shipping over the plaintiff's road to points both within and without the state of Georgia the finished product of said plant, to wit, wagons, buggies, etc. By written contract entered into in April, 1903, between the plaintiff and the defendant B. M. Blount, the former leased to the latter the tract of land, containing about $5^1/_9$ acres, upon which the defendant corporation's manufacturing plant is located. This lease was for the term of 20 years, with the privilege of renewal for an additional period of 20 years under the same terms and conditions, at the option of the lessee, his heirs and assigns. The lease stipulated for the erection and completion of said plant not later than January 1, 1904, and that at no time during the term should the leased premises be used for any other purpose than that of the business mentioned, or some other business requiring the receipt and shipment of freight in volume substantially equal to that enterprise. The lessor agreed to construct and furnish all material to lay complete, free of cost to the tenant, except as hereinafter stated, a spur track extending from a point on the lessor's line through property not owned by it to a point on the leased tract. The lessor agreed that, if it was found practicable for it to obtain a release of the leased land from a mortgage covering it at any time during the term, it would sell and convey it to the lessee at the price of $1,000 per acre, but it was stipulated that this provision was not to be considered or construed as binding the lessor, its successors or assigns, to make such sale and conveyance unless it is considered by the lessor entirely practicable and feasible to do so. There was a stipulation forbidding, without the written consent of the lessor, the assignment of the lease and the subletting of the whole or any part of the plant or leased land to any one other than the defendant corporation or the White Hickory Wagon Manufacturing Company, another corporation. At the expiration of the lease the tenant is to own all improvements placed on the premises by him and to remove them from the premises. The lessor was given the right to terminate the lease by giving 30 days' written notice of its desire to do so whenever the tenant failed to carry out in good faith any of its covenants, or to continue the business on the leased land as contemplated by the lease. The tenant agreed to furnish, or cause to be furnished, free of expense to the lessor, a lease to a right of way for said spur track where it ran over land not belonging to the lessor, and the lessor was to have the use of that spur track for all other purposes which shall not interfere with the tenant's use of it. The lessor reserved the right to remove that spur track at its pleasure. The lessee agreed to save and hold harmless the lessor, its successors and assigns, from all damage, injury, or liability that may arise from the destruction or injury of any building, improvement, or personal property of any description, by fire or from any other cause whatever, when such damage, injury, or liability is caused or increased by reason of the occupancy of the leased land and the construction and use of said spur track. There was no rental in terms reserved, and the concluding provision of the lease was the following: "It is also understood and agreed, in consideration of the covenants herein agreed to be kept, that the tenant will route or caused to be routed, whenever the right to do so rests with the tenant, via the lines of the railway company and the Ocean Steamship Company of Savannah, their successors and assigns, all shipments of freight made either by, to, or for account of himself, his heirs or assigns, whenever the lawful rates and facilities are equal, where such shipments of freight are made from or to points reached by the said lines and their connections: Provided, the tenant shall have the routing of shipments (it being understood that purchasers of and sellers to the tenant may direct other routes), and further provided that such routing shall not delay or otherwise interfere with the interests or business of the tenant."

The bill as amended contains the following averments: "The lease in question was granted by the complainant to the defendant in pursuance of a policy of the complainant of encouraging the location of industries along its lines of railroad in order that its traffic might be increased. The consideration of

the lease is grossly less than the fair and reasonable rental value of the premises; its real intention being to give the defendant the premises rent free. The provisions in the lease as to the acquiring of right of way, and as to giving the lessee the conditional option to purchase the property, were for the benefit of the lessee, and not for the benefit of the complainant. Neither the complainant nor the lessee contemplated any other benefit to the complainant than that of increasing its freight traffic. The object of complainant in granting to the defendant the use of its property rent free, or at a nominal rental, was not to create an unjust discrimination; but the lease was made in good faith, and the allowing of the defendant to use its property rent free, or at a nominal rental, was not made with the intention of violating any law or public policy. Nevertheless complainant is advised and believes, and so charges, that the legal and practical effect of its allowing the defendant to use its property rent free and without charging it a fair price for the use of its property is to create a discrimination in favor of the defendant, and to give the defendant an undue and unlawful preference,' and to subject other shippers along its line and other localities to an undue and unreasonable prejudice and disadvantage in the respect that, while other shippers of the same and like commodities from different localities on the defendant's lines, in commerce between the several states, have to provide the premises on which to erect their plants at their own cost, the complainant, in effect, by the lease in question, gives to the defendant the use of a portion of its own premises rent free, or at a rental so nominal as to be practically preferential in defendant's favor. There are along the lines of the defendant company a number of other shippers in interstate commerce engaged in like business to that of defendant and shipping over the complainant's lines commodities of the same and similar nature as those shipped by the defendant, and the complainant cannot and does not extend to them the same privilege. Furthermore, the complainant has filed and published the printed tariffs provided for by section 6 of the act of Congress commonly known as the Interstate Commerce Act, and the tariffs so filed do not provide for the extension to shippers of any such privilege as that accorded to the defendant under the terms of the lease in question, nor can the complainant reasonably file a tariff granting such privilege generally to shippers over its lines; and complainant is advised, and so charges, that for this reason said lease is unlawful and void, and that it is violative of said act of Congress for it or for the defendant to comply with." It also was averred that the reasonable rental value of the leased premises is $300, or other large sum, and that the plaintiff has made repeated demands upon the defendants to readjust the lease contract, so that the plaintiff will receive a reasonable rental from the premises, and that these demands have been refused by the defendants. The bill prayed that the lease contract be canceled and delivered up, or, in the alternative, that, if the defendants elect to remain in the leased premises, the lease be reformed, so that it will not allow the defendants a special privilege and will provide for the payment to the plaintiff of a reasonable rental. It also contained other prayers for special and general relief.

The defendants moved the dismissal of the bill upon the following grounds, stated against it as a whole: "The allegations of fact made in said petition, when taken in connection with the provisions of the lease contract, copy of which is attached thereto, do not show that there is no consideration moving to complainant, except the routing of inbound and outbound freight, and do not show that a continuance of the lease is unlawful and amounts to an unlawful preference. The allegations of fact made in said petition, when taken in connection with said exhibit, show that there were valuable and lawful considerations therefor, other than the consideration of the shipments of freight therein mentioned, to wit, the furnishing of the right of way for the spur track mentioned in paragraphs 3 and 8 of said exhibit, the erection of a manufacturing plant on the leased land contained in paragraphs 2 and 7 of said exhibit, the provision as to the sale of said leased land contained in paragraph 4 of said exhibit, and the covenant to save harmless the railway company contained in paragraph 9 of said exhibit. That portion of the consideration of said lease, expressed in paragraph 10 of said exhibit, as to the routing

of freight, was not and is not contrary to law, and did not and does not amount to an agreement for an unlawful preference or for a rebate on freights to and for the defendants, because the same provides for such routing only when the lawful rates and facilities are equal. Because the complainant, having executed the said lease and having thereby induced and moved the defendant to erect the manufacturing plant and build up a business therefrom of great profit, is estopped to claim and obtain, from the court of equity, its intervention to cancel or reform said lease."

This motion to dismiss was sustained, and the plaintiff appeals.

A. R. Lawton, T. M. Cunningham, Jr., and H. W. Johnson, all of Savannah, Ga., and John D. Little, Arthur G. Powell, Marion Smith, and M. F. Goldstein, all of Atlanta, Ga., for appellant.

John L. Tye, Henry C. Peeples, and John A. Hynds, all of Atlanta, Ga., for appellees.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge (after stating the facts as above). The terms of the motion to dismiss indicate the absence of any intention to question the sufficiency of the bill upon any ground other than its asserted failure to show the legal invalidity of the attacked lease contract, and that the plaintiff is estopped to bring that instrument into question. We shall deal with the controversy as the parties have chosen to present it, confining ourselves to a consideration of the questions raised by the motion to dismiss.

[1] The terms of the lease, and averments in the bill of circumstances attending the making of it, show that the lessee, or his personal representative or authorized assign, was to have the use for the period of 20 years, which at the tenant's option could be extended to 40 years, of a manufacturing site containing more than five acres, presumably worth $1,000 per acre, the price stated in a stipulation evidencing a contemplated sale and conveyance of it by the lessor to the lessee, and having an annual rental value of $300 or more. The contract does not in terms provide for the payment of any rent. It is suggested that a compliance with certain obligations imposed upon the tenant by the lease is to be regarded as a substitute for money rent. The undertaking of the lessee to save the lessor, its successors and assigns, harmless from damage, injury, or liability caused or increased by reason of the tenant's occupancy of the leased premises and use of the spur track, could not have the effect of compensating the lessor to any extent for the use of its manufacturing site. The extent of its operation was to save the lessor from loss occasioned by the tenant's use of the leased land and of the spur track. A compliance with the lessee's obligations to furnish, or cause to be furnished, free of expense to the lessor, a lease to a right of way for the spur track where it ran over land not belonging to the lessor, and to allow the lessor to use that track for its own purposes, when this did not interfere with the tenant's use of it, could not well be mistaken for the equivalent of an annual money rental of $300 or more for the manufacturing site. The spur track belonged to the

lessor, was constructed and maintained by it at its own expense, and was partly on its land and partly on another's. The right of the lessor to use its own track for its own purposes only when this did not interfere with the tenant's unrestricted right to use it is, to say the least, such a contingent and equivocal benefit that its value must be little, if any, more than nominal, considering the lessor's outlay involved. Other provisions of the lease make it plain that the parties to it did not understand or intend that a compliance with the lessee's obligations just mentioned would amount to an agreed reasonable and adequate rental for the leased tract. The right to continue the occupation and use of the leased premises was distinctly made dependent upon the continued operation thereon of the manufacturing plant stipulated for, "or some other business requiring the receipt and shipment of freight in volume substantially equal to such enterprise," and upon the continued carrying out in good faith of the stipulation in regard to the routing by way of the lessor's railway of all shipments of freight made by, to, or on account of the lessee, his heirs or assigns.

It cannot be supposed that the lessee would have bound himself by these stipulations if he had considered that a compliance with other obligations imposed upon him and his assigns by the lease amounted to the payment of an adequate rental. The whole tenor of the lease leaves no room for reasonable doubt that the provisions of it looking to the bringing about of a continued preferential treatment of the lessor by the tenant in the matter of the shipment of freight constituted, if not the sole, at any rate the controlling, substantial inducement to the lessor for allowing its land to be occupied and used without the payment of rent. Nor is it to be doubted that to the extent that the tenant escaped the payment of a reasonable adequate rental there was a deduction from the sum of the tariff rates paid on shipments of freight to and from it over the lessor's railway. It is apparent, from the terms of the lease and from the averments of circumstances attending the making of it and performance under it, that its failure to provide for the payment of rent was a concession to the lessee; and that this concession or discrimination was in respect of the transportation of property in interstate or foreign commerce by the lessor common carrier is to be inferred from the fact that it was to continue only so long as there was a continuance of shipments of that kind to and from the tenant over the lessor's railway. The stipulations just referred to stand in the way of regarding the transaction as merely the furnishing by a landowner of a free site for a manufacturing plant because of the benefits expected to result from a hoped-for enhancement of property values. Here the right to use the site on the stipulated terms ends when it ceases to be occupied by a shipper of freight over the common carrier donor's line of railway, or upon the occupant's failure, when it is reasonably practicable to do so, to continue to route or cause to be routed by way of the donor's railway all shipments of freight under the occupant's control, including such shipments as might be routed otherwise.

[2] It is made to appear that the lease in question operated to confer a bonus or benefit on the lessee, or his assigns, as a shipper of freight, which the carrier did not and could not confer on other shippers, and had the effect of making the rates paid on shipments controlled by the tenant less than those named in the lessor's published and filed tariffs. "By section 2 of the act to regulate commerce the carrier is guilty of unjust discrimination, which is prohibited and declared unlawful, if by any rebate or other device it charges one person less for any service rendered in the transportation of property than it does another for a like service. The Elkins Act makes it an offense for any person or corporation to give or receive any rebate, concession, or discrimination in respect to the transportation of property in interstate commerce whereby any such property shall be transported at a rate less than that named in the published tariff, or whereby any other advantage is given or discrimination is practiced." United States v. Union Stockyard, 226 U. S. 286, 307, 33 Sup. Ct. 83, 89 (57 L. Ed. 226). Averments of facts contained in the bill show that the lease operated to violate the statutory provisions mentioned and summarized in the quotation just made. The conclusion reached that it is invalid, we think, is well supported by authority. United States v. Union Stock Yard, supra; Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, 204 Fed. 849, 123 C. C. A. 145; Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671.

[3] It has not been attempted in argument to support the ground of estoppel stated in the motion to dismiss. A party to a transaction prohibited and penalized by law cannot estop himself from setting up its invalidity. McCutcheon et al. v. Merz Capsule Co., 71 Fed. 787, 19 C. C. A. 108, 31 L. R. A. 415.

In our opinion the bill was not subject to be dismissed on either of the grounds stated in the motion made to that end.

The decree appealed from is reversed.