130 A.2d 321 (1955)
Oscar SCHLEIFF, Plaintiff,
v.
The BALTIMORE & OHIO RAILROAD COMPANY, a corporation of the State of Maryland, and General Motors Corporation, a corporation of the State of Delaware, Defendants.
Court of Chancery of Delaware, New Castle.
October 19, 1955.
On Motions for Reargument April 13 and May 14, 1956.
On Renewed Motions for Summary Judgment March 15, 1957.
*325 William E. Taylor, Jr., Wilmington, and William E. Haudek, Pomerantz, Levy & Haudek, New York City, Robert C. Barab, Wilmington, and Charles Rosenthal, New York City, for plaintiff.
Aaron Finger and Edmund N. Carpenter, II (of Richards, Layton & Finger), Wilmington, and Henry M. Hogan, Detroit, Mich., for defendant General Motors Corp.
William Prickett, Wilmington, for defendant Baltimore & O. R. Co.
SEITZ, Chancellor.
This is a derivative action filed in July 1952 by a stockholder of a carrier, Baltimore and Ohio Railroad Company (hereafter "B & O"), seeking rescission of the sale of certain lands by B & O to a then potential shipper, General Motors Corporation (hereafter "GM"). The basic theory of the action is that the price paid for the land was legally inadequate and constituted an advance rebate on contemplated freight charges on freight which would move to and from the plant which GM would build on the land. Alternatively, the complaint seeks a money judgment for the amount of the anticipatory rebate. Defendant GM has moved for summary judgment and for judgment on the pleadings on the following grounds:
1. The exclusive remedy in this situation is vested in the United States under the Federal law.
2. The action is barred because B & O was a party to the alleged illegal transaction (pari delicto and unclean hands).
3. The complaint fails to state a claim on which relief can be granted because it alleges that B & O sold the land to GM for less than cost but it does not allege that the price for which the land was sold to GM was less than the fair value of the land.
4. If plaintiff's claim is valid by analogy to a claim for rate undercharge, it is barred by the two year Statute of Limitations.
*326 By deeds dated August 13, 1945, and June 29, 1948, GM acquired two tracts of land on Boxwood Road near the town of Newport, Delaware, from the subsidiaries or agents of B & O at a cost of $150,000. Plaintiff alleges that these tracts had been purchased by B & O for $284,991.28 (B & O's answer sets the price at $281,895.21). The answers for both B & O and GM deny plaintiff's allegation that the land was purchased by B & O at GM's request for resale to GM. The transfer has long since been fully consummated and GM has erected an automobile assembly plant on the property thus acquired from B & O. This plant is located along the B & O tracks and interstate rail shipments to and from the plant travel over the B & O lines. They commenced February 1, 1947.
I now consider GM's first contention that the carrier[1] has no remedy for the violation here alleged but that the sole remedy is in the United States. The pleadings first confined the plaintiff's claim to the Elkins Act amendment to the Interstate Commerce Act, 49 U.S.C.A. §§ 41-43, but at oral argument it was agreed by plaintiff and GM that the matter should be disposed of as though plaintiff had amended his complaint to include the entire Interstate Commerce Act.
Under the Interstate Commerce Act of 1887, as then enacted, both rate undercharges and rebates, inter alia, were made unlawful. See 49 U.S.C.A. § 2 (rebates) and § 6, Para. (7) (rates). The Supreme Court of the United States early recognized the right and duty of the carrier to sue the shipper to collect any rate undercharge. The shipper had the same right with respect to an overcharge. These actions were recognized even though the Act did not explicitly provide for them. The reason for their recognition was to implement the public policy of the Act which was deemed to override purely private rights. Compare Gulf C. & S. F. R. Co. v. Hefley, 158 U.S. 98, 15 S.Ct. 802, 39 L.Ed. 910; and see McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562. These actions could be brought in the state courts. See Artic Roofings v. Travers, 3 Terry 293, 32 A.2d 559.
A rebate of the type here alleged[2] is in effect a form of rate undercharge. See Matter of Leases and Grants of Property by Carriers to Shippers, 73 I.C.C. Reports, p. 671. As to this point, see also Cleveland, C. C. & L. Ry. Co. v. Hirsch, 6 Cir., 204 F. 849. Since a carrier could sue a shipper for an undercharge, and since a rebate has the consequence of a rate undercharge, it would seem to follow by parity of reasoning that a carrier could sue a shipper to recover a rebate. GM contends that unlike a rate under or overcharge case, a carrier cannot sue a shipper to recover a rebate.
GM insists that the right given the United States under the Elkins Act, 49 U.S.C.A. § 41, to sue the shipper for three times the amount of a rebate is the exclusive civil remedy for such unlawful action and that the carrier has no right to sue the shipper. The right to sue was not given the United States until the enactment of the Elkins Act amendment of 1906. Yet, a rebate like an undercharge was made unlawful in 1887 under the original Interterstate Commerce Act, 49 U.S.C.A. § 2. If before 1906 a carrier could not have sued the shipper for return of a rebate then there was no civil remedy to recover a rebate during that period. This would be a strange situation in the light of the decisional law even prior to 1906 holding that a carrier could sue a shipper for an undercharge, and this without an explicit statutory provision therefor. If the full public policy of the original Act was to be implemented, it was equally important to recognize the existence of a right of action in the carrier to recover a rebate. Otherwise, *327 a shipper receiving a rebate would have in effect paid less than the published rates without civil law consequence. I conclude that such an action existed in the carrier prior to the Elkins Act. Indeed, the Elkins Act explicitly preserves actions existing under the original Act.
Even under the Elkins Act there is a rebate if the shipper obtains an "advantage" tested by actual results, not intention. Union Pac. R. Co. v. United States, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453. But before the Government can recover from the shipper, by way of penalty, three times the value of the rebate under § 41(3) of the Elkins Act, it must prove that the shipper "knowingly" accepted the rebate. Thus an action by a carrier to recover a rebate from a shipper would not be based on the penal theory underlying an action by the Government, and would not require a showing of "knowing" acceptance by the shipper. Rather it would be based on the public policy of the Act requiring the carrier to recover a rebate so that it will have collected its full published rates.
The Elkins Act provision for action by the Government does not prevent the filing of the present action.
It may also be noted that the Sixth Circuit Court of Appeals in Cleveland, C. C. & L. Ry. Co. v. Hirsch, above  a case relied upon by GM  recognized a right in the carrier to relief against a shipper to the extent necessary to implement the public policy of the original Act and the Elkins Act. This case would therefore seem to be authority for the proposition that a carrier can sue a shipper not only under the original Interstate Commerce Act but also under the Elkins Act in a rebate case. As will be noted later herein, I feel compelled to disagree with the Hirsch case insofar as it deems the pari delicto doctrine applicable.
I therefore conclude that the carrier is entitled to relief both under the original Interstate Commerce Act and under the later Elkins Act. It is not suggested that a state court is otherwise without jurisdiction to entertain such an action.
Since the complaint alleges that the rebate was the result of a conspiracy between B & O and GM, it is argued by GM that B & O is also a wrongdoer and is barred from recovery because it is in pari delicto with GM or is bound by the clean hands doctrine.
Although this action is by a stockholder of B & O, nevertheless, it is a derivative action on behalf of B & O and so, here at least, any defense available against B & O is available against plaintiff. See 13 Fletcher, Cyc. of Corps. (Perm. Ed.) § 5859.
Thus we must consider whether pari delicto would be available as a defense were this an action by B & O. GM cites two cases for the proposition that the doctrine is applicable. Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, 204 F. 849; Oregon Short Line R. Co. v. American Smelting, 10 Cir., 269 F. 898. These cases appear to support GM's position. In the Oregon Short Line case the court refused to permit the carrier to recover amounts otherwise due under the Act because of the pari delicto doctrine. The court purported to distinguish decisions refusing to apply the pari delicto doctrine to rate cases on the ground that such cases only involved defenses of mistake or inadvertence. The fact is that the recovery in such actions is not limited to cases of those types but also embrace cases where there has been a wilful violation of the Act. See Wash. & C. Ry. Co. v. Mobile & O. R. Co., 5 Cir., 255 F. 12. The Oregon Short Line decision therefore appears to run contrary to the reasoning and policy exemplified by the rate cases.
The Hirsch case emphasizes the distinction between the completed and the uncompleted portion of an illegal contract but I cannot see the force of the distinction when even a partial recognition of the pari delicto defense defeats the public policy of *328 the Act. The fact that the Elkins Act was not involved in the rate cases mentioned does not change the result for the reasons heretofore stated.
While the doctrine of pari delicto is a vital principle in equity, nevertheless, this Court feels compelled to follow the rationale of the U. S. Supreme Court cases requiring the carrier to recover undercharges even though the carrier was guilty of conduct otherwise calling for the application of the pari delicto doctrine. The defenses of pari delicto, estoppel, unclean hands, etc., are just not recognized in these cases because to do so would be to override the public policy reflected in the Interstate Commerce Act. See Kansas City Southern Ry. v. Carl, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683; Baldwin v. Scott County Milling, 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; See also McFadden v. Alabama Great Southern Co., 3 Cir., 241 F. 562.
And as Justice Holmes said in an action by the Government to restrain a carrier from violating the Act, the benefits received by a carrier as a result of an agreement which violates the Act cannot justify the violation. Lehigh Valley R. Co. v. United States, 243 U.S. 444, 37 S.Ct. 434, 61 L.Ed. 839. It is therefore with great deference that I decline to follow the Oregon Short Line and the Hirsch cases to the extent they apply the pari delicto doctrine.
I conclude that the pari delicto defense is not applicable to this action.
I next consider GM's contention that the complaint fails to state a claim entitling plaintiff to relief. This contention is based entirely on the absence of an allegation that the land was sold to GM for less than its fair value.
Plaintiff's pleadings show that he first charges that the sale of the land by B & O to GM was illegal and a fraud on B & O's stockholders because it was a rebate or offset (anticipatory, I presume) against B & O's regular transportation charges as found in its schedules published under the Act.
Under present rules of pleading (GM's motion for summary judgment apart) I believe plaintiff's allegation is a sufficient statement of claim. One reasonable inference from the charge of rebate is that the land was sold to GM for less than its fair value. This would be a rebate. Consequently, insofar as the motion for judgment on the pleadings is concerned, the motion must be denied.
GM has also moved for summary judgment and so it becomes necessary to consider whether it is entitled to judgment on the basis of the contention that plaintiff has failed to state a claim upon which relief can be granted. As GM views the complaint, it merely alleges that the property was sold by B & O to GM at less than B & O's costs. GM contends that the mere purchase of a property from a carrier at less than the shipper's costs does not constitute a violation of the act by the purchasing shipper.
First, plaintiff disclaims any intention to rely upon the mere charge that a sale by a carrier to a shipper at less than the shipper's cost is in and of itself a rebate. Plaintiff alleges an illegal rebate. This supports an inference that he charges that the property was purchased at a price below its fair value, concededly a rebate, if proved. On the present status of the record there is no reason to draw an inference against the plaintiff's allegations. Plaintiff therefore first contends that on the basis of the present pleadings it is a disputed matter as to whether GM purchased the property for a fair and adequate price.
Secondly, plaintiff points out that he charges in his complaint that the property was actually purchased by B & O at the request of GM for the purpose of resale to GM. This is denied in the answers of both GM and B & O. If plaintiff should *329 be able to prove this charge then, explanations aside, it would support a charge of an unlawful rebate. I say this because as the Court stated in U.S.A. v. GM, below, "* * * if GM desired this property its gain is not to be measured in terms of the property's fair or appraisal value as an industrial site, but in terms of what would have to have been paid for it but for the intervention of Baltimore * * *" In other words, did B & O grant a rebate by absorbing part of GM's costs?
A review of the papers filed to date fails to show any subject matter touching on the price other than that contained in the complaint and answers. Such pleadings, in substance, put in issue the two points relied upon by plaintiff. Therefore at the summary judgment stage where there have been no material facts added to the pleadings by way of affidavits or depositions, it is the duty of the court to rely upon the pleadings. Since it appears that material issues of fact are in dispute GM's motion must be denied.
I therefore conclude that the complaint does state a claim sufficient to overcome defendant's motion for summary judgment.
Finally I consider whether or not the two year Statute of Limitations is a bar to plaintiff's claim.
GM says that if this court is to rely on the rate cases as authority for this action, then by analogy the two year Statute of Limitations applicable to recovery of such charges should be invoked. 49 U.S. C.A. § 16(3) (a). The short answer must be that this is not an action to recover a charge as such and so that Statute is inapplicable[3]. Compare United States v. General Motors Corp., 3 Cir., 226 F.2d 745. Certainly the concealed nature of many rebate cases would tend to militate against the application of a two year statute unless the matter was beyond reasonable doubt. This is particularly true where a court of equity is asked to apply a statute of limitations. I emphasize that I have mentioned only the statute relied upon in GM's brief. Indeed, it is here alleged that plaintiff had no knowledge of the facts concerning these transactions until about June 1, 1952. The action was commenced July 30, 1952.
Assuming a statute of limitations would be applicable, I conclude that the action is not barred by the statute relied upon by GM.
I have ruled only on the points briefed and argued (including all of the I.C. Act). On the basis thereof, I conclude that GM's motions for judgment on the pleadings and for summary judgment must be denied.
Order on notice.

On Motion of General Motors Corporation for Reargument.
The defendant General Motors Corporation ("GM") moved for reargument in order that it might obtain a ruling on its contention that the Delaware three year Statute of Limitations, 10 Del.C. § 8106, bars this action. GM had pleaded this statute in its answer but did not refer to it in its motions for judgment on the pleadings and for summary judgment or in the briefs and argument thereon. Consequently the point was not decided in the previous opinion. GM's motions will now be considered as asserting its limitations' defenses. I am now called upon to decide whether the Delaware three year statute is a bar. The Court has found it extremely difficult to resolve the complex and difficult problems presented in both opinions.
Before deciding the three year statute point, I should note that GM also argues that 10 Del.C. § 8114, providing a one year statute of limitations on actions for a forfeiture under a penal statute, bars this action. This argument was not pursued *330 with any enthusiasm by GM's counsel, and understandably so since I think it clear that the complaint here does not involve an action for a forfeiture under a penal statute. This basis for GM's motions is without merit.
We turn now to GM's contention that the three year Delaware Statute bars this action. Plaintiff tacitly concedes that if the claim be viewed as one solely for monetary relief then it is one of the type embraced by the statute. It is also conceded that the transaction under attack was consummated more than three years before the filing of the action
Plaintiff argues that its claim is exclusively equitable because this is an action seeking to rescind an illegal rebate contract and therefore no statute of limitations is applicable. Plaintiff denies that B & O could have brought an action at law for monetary damages. Finally plaintiff says that even if the claim is within this Court's concurrent jurisdiction the Court should not apply the statute here because of the special circumstances involved.
We have here a complaint by a stockholder of B & O seeking rescission of a contract whereby B & O allegedly conspired with GM to sell GM certain land at a price which constituted an illegal rebate under the Interstate Commerce Act and the Elkins Act. Fraud and waste of assets are also charged but arising out of the same act.
Plaintiff knew prior to the filing of the complaint that the contract had been consummated and that defendant had erected and was operating an automobile assembly plant on the land sought to be recovered by rescission. Thus plaintiff was aware at the time the complaint was filed that it had become impractical to grant the equitable relief sought, viz., rescission. These matters may be fairly inferred from the complaint, and no other papers on file tend to alter this conclusion. The land was acquired at different times but as the Federal Court noted, it was really one transaction so far as the pertinent facts are concerned. See United States v. General Motors Corp., 3 Cir., 226 F.2d 745[1].
Plaintiff relies upon the cases of Cleveland, C. C. & S. T. L. R. v. Hirsch, 6 Cir., 204 F. 849 and Central of Georgia R. Co. v. Blount, 5 Cir., 238 F. 292, as showing that this may properly be considered as a complaint for rescission within the exclusive jurisdiction of equity. Those cases recognized rescission as an available remedy in a rebate case but in both cases the contracts were executory in part. Such is not the case here. It is true that where the events making rescission impossible occur after the complaint is filed equity may retain jurisdiction to grant alternative relief in the form of monetary damages. See 1 Pomeroy's Equity Jurisprudence (5th ed.) § 237(e). But that is not the situation here. Consequently authorities of that tenor are not in point. Plaintiff's complaint must be viewed as one for monetary relief alone. Compare 1 Pomeroy, above.
But plaintiff claims that B & O could not have sued on this claim at law and so a concurrent jurisdiction case is not presented even if the claim is purely monetary in character. Obviously, plaintiff could not have sued at law because he is suing in the right of B & O. But could B & O have so sued? GM says "yes", and points to the analogy of law actions for rate undercharges and overcharges. Plaintiff retorts that this is an illegal rebate contract and as such is to be distinguished from an undercharge contract. Plaintiff argues that in an illegal rebate case the law court cannot remake the contract in effect by inserting the legal amount as it can and does in a rate undercharge case. Plaintiff says the difference is that in a rate undercharge case the published rate is part of *331 the contract and readily ascertainable. The same certainty, he says, is not present in an illegal rebate case.
It is true that the undercharge cases involve matters where the amount of the legal rate is established and so the action at law is merely to recover a sum certain which by law is a part of the contract. Obviously, however, illegal rebates take many forms and their evaluation may be difficult. However, one of plaintiff's claims here is that B & O was acting in effect as agent for GM. If such was the case the amount of the rebate would be just as certain as in a rate undercharge case. Even under plaintiff's alternate theory that fair value was not received by B & O, the problem is one concerning the value of land, always a unique problem and within a jury's competence. It is not a question of establishing a standard governing innumerable transactions, a matter which might be for the I. C. C. I assume state court jurisdiction here.
I therefore am unable to see why B & O could not have sued GM at law.
This action is properly in equity solely because it is a derivative action. The nature of this action must be considered as solely monetary and must therefore be treated as one within the concurrent jurisdiction of this court insofar as the statute of limitations defense is concerned. See Bovay v. H. M. Byllesby & Co., 27 Del. Ch. 381, 395, 38 A.2d 808, 174 A.L.R. 1201.
Applying the rule of the first opinion that generally speaking defenses available against B & O are available against plaintiff because plaintiff sues on behalf of B & O, it follows that this complaint is barred by the Delaware three year Statute of Limitations unless special circumstances exist which warrant a Court of Equity in holding the statute inapplicable even in a concurrent jurisdiction case. See Bovay v. H. M. Byllesby & Co., 27 Del.Ch. at page 395, 38 A.2d 808.
The Court in Bovay v. H. M. Byllesby & Co. held the statute of limitations inapplicable because of the special circumstance that the alleged wrongful acts were committed by the officers and directors against the corporation for whose benefit the action was maintained. The Court held that a trust arose in favor of the corporation and consequently the statute was not a bar. By way of distinction it may be noted that this is not a case of the officers of B & O benefiting at the expense of the corporation.
It is true that the defense of pari delicto or unclean hands will not defeat an action to recover an illegal rebate or rate undercharge or overcharge. This is so because it is said that if those defenses were to be recognized they would defeat the policy involved in the Federal Acts. However, the same policy considerations seem not to have been applied to the statute of limitations defense. I say this because there is an explicit Federal statute of limitations applicable to rate cases. The same is true in actions by the Government to recover rebates under the Elkins Act. While there appears to be no Federal statute of limitations applicable to rebate actions commenced by a shipper or carrier the parties have assumed that the Delaware statute would apply in a state court action if it is viewed as a monetary claim. A possible reason why the limitations' defense is applicable while the others are not may be found in the fact that lapse of time might prevent a defendant from presenting its defenses concerning value because of loss of witnesses and evidence. Those considerations would not be directly involved in the defenses of pari delicto or unclean hands.
Plaintiff says that B & O here conspired with GM to defraud B & O's stockholders. He also points out that it is most unlikely that any action would have been brought against GM until there was a disclosure to a B & O "outsider". Consequently, plaintiff says it would be inequitable to hold that *332 the statute commenced to run until the outside stockholder had notice. Plaintiff alleges that the action was brought promptly after its discovery by him.
We must keep in mind that plaintiff is suing in B & O's behalf. An action by B & O for monetary relief would be barred by the statute either at law or in equity. B & O is as much in the wrong as GM, if plaintiff's allegations are true, and so there is no reason for a Court of Equity to give undue consideration to an alleged coconspirator.
Plaintiff contends that the principles of Bovay v. H. M. Byllesby & Co., above, and Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418, support his position that GM must be treated as though it were in the same position as a trustee. Certainly the Bovay case, for limitations' purposes, makes corporate officials trustees where they have diverted corporate assets. The Jackson case holds equally liable those who knowingly join a fiduciary in an undertaking which violates fiduciary concepts. Assuming that the rule in the Jackson case is the law of Delaware, the fact remains that we are not here dealing with a formal fiduciary or a transaction of the type there involved. Here there is no charge that B & O officials made any profit from the transaction or that GM dominated B & O. Thus, I do not believe that the principles announced in the Bovay and Jackson cases are here applicable.
Despite the special circumstances here involved, I conclude that the statute is applicable and that it commenced to run in 1948 when the transaction was finally consummated.
While my conclusion may be said to put a premium on secrecy in wrongdoing I can only say that the statute of limitations by its nature permits such a possibility. Compare Mastellone v. Argo Oil Corp., 7 Terry 102, 82 A.2d 379. Moreover, the alleged wrongdoing is of the type which would, if plaintiff were successful, benefit one of the alleged wrongdoers  a result not to be preferred generally in a Court of Equity. While the stockholders may also suffer they suffer because of the alleged illegal activity of their own officials in dealing with the outsider GM. Plaintiff contends that the statute did not commence to run against him until the disclosure to him. Such a test would result in great uncertainty in the application of the statute of limitations. Certainly this consequence is not to be preferred in an action against an entity which is not alleged either to owe any fiduciary duty to or to dominate or control the corporation for whose benefit the action is brought.
I therefore conclude that plaintiff's claim is barred by the Delaware statute of limitations and consequently defendant's motions for summary judgment and judgment on the pleadings must be granted.
Order on notice.
On Plaintiff's Motion for Reargument.
On April 13, 1956, this Court ruled that the plaintiff's complaint was barred by the Delaware three year Statute of Limitations. Thereafter plaintiff moved for reargument on three grounds. This is the decision on the motion.
Plaintiff's first ground is that the Court erred in holding that the action was not properly viewed as one for rescission. Plaintiff says that where rescission is impracticable because of improvements made by defendant, the action is still treated as one for rescission. However, if the improvements have been made in good faith that will be considered by the Court in molding its relief.
Plaintiff cites certain cases in support of his position. Blank v. Aronson, 8 Cir., 187 F. 241; Conlan v. Sullivan, 110 Cal. 624, 42 P. 1081; Kimmel v. Peach, 240 Mich. 697, 216 N.W. 374. These cases presuppose that rescission was practicable. In our case the complaint as presently evaluated shows that to plaintiff's knowledge when he filed *333 the complaint rescission was impracticable. There is no suggestion that GM made the improvements to "circumvent the owner". Compare Blank v. Aronson, above.
The cases cited by plaintiff do not support his contention that a court of equity will retain jurisdiction over an action for rescission even though rescission has been rendered impracticable because of improvements made by a defendant. Plaintiff says that in such cases, where the improvements have been made in good faith, the court will grant monetary or some other alternative relief. While a court of equity might be more receptive to a complaint for rescission where the improvements rendering rescission impracticable have been made by the defendant, the rule cannot be that equity accepts all such cases where the defendant has made the improvements. Moreover, a rule of such broad scope would, as a practical matter, constitute a severe encroachment on the jurisdiction of the law courts. While a court of equity might well resolve the doubt concerning "impracticality" in favor of its own jurisdiction, where it clearly appears at the time the complaint is filed that rescission would not be practicable, the plaintiff will be left to his action at law. Consequently, there is now no basis for considering the complaint as one for rescission. Plaintiff's motion for reargument on this point will be denied.
Plaintiff next contends that the Court should not have construed the complaint as embracing only one transaction. Since the tract of land involved consisted of two pieces conveyed at different times, he contends that they should be evaluated separately for purposes of determining whether rescission was impracticable at the time the complaint was filed. In a footnote to my previous opinion I suggested that plaintiff, if he desired, would be given an opportunity to develop this point. The papers now on file do not call for any modification of my conclusion but plaintiff will be given an opportunity to amend his complaint to set forth the facts concerning this matter. After the parties have developed the facts appropriately the court will consider the matter. Also, I agree that the holding of the Federal Court in United States v. General Motors, 3 Cir., 226 F.2d 745, that the transaction should be viewed as a unit for statute of limitations' purposes is not dispositive of this point.
The third ground of plaintiff's motion is that the court erred in concluding that the statute was not tolled until plaintiff became aware of the transaction.
Preliminarily, I desire to make it entirely clear I have no quarrel with the cases holding that the statute of limitations is tolled until the fraud and concealment appropriately appear. The point I sought to make in the previous opinion was that plaintiff sued in the right of B & O which was a party to the transaction and for the reasons there set forth neither was entitled to the benefit of the rule which tolls the statute. I reiterate, this is not an action against B & O's directors. It is against GM who, so far as appears, had no control over B & O or over B & O's disclosures to its stockholders. Nor is there any suggestion that B & O's directors profited personally from the transaction.
The motion for reargument on the third ground will be denied.
An order may be presented fixing a time within which plaintiff may amend.

On Renewed Motions of General Motors Corporation for Summary Judgment and for Judgment on Pleadings.
This is the decision on GM's renewed motions for summary judgment and for judgment on the pleadings. While a few "new" contentions are made, basically this opinion attempts to dispose of the issues not completely resolved in prior opinions. The facts are rather fully presented in those opinions and will only be repeated when necessary to an understanding of the matters here considered.
*334 Although it was implicit in the Court's previous rulings that the amended complaint should be confined to the further development of one point, plaintiff inserted in his amended complaint some allegations which, as is stated in his brief, constitute "an additional ground of recovery not heretofore considered by the Court". This new ground is outlined as follows in his brief:
"Rescission is not even necessary; the conveyances both of 1945 and 1948 are absolutely void; the B & O has therefore a legal right to the immediate possession of the entire property which is not barred by limitations."
Thus, plaintiff's position is that as a matter of law there was no conveyance by B & O to GM and so this action is in effect solely to obtain possession of the land. Plaintiff does not point out how or why the transaction is void and the Court is unable to think of any reason why the entire transaction should be so treated under the present circumstances. The sole attack upon the transaction is the alleged inadequacy of the sale price because of the Federal Law. Even though proved, I do not believe the result would here be the complete nullification of the transaction. Monetary relief would be adequate.
I therefore conclude that the first "count" or cause of action asserted in the amended complaint is either without merit as a matter of law or is barred by the Delaware Statute of Limitations. GM's motion for judgment on the pleadings as to this count will be granted.
Plaintiff next contends that this is a claim for rescission and, being within equity's exclusive jurisdiction, is not subject to the statute of limitations' defense. I have ruled in a prior opinion that where it appears that rescission was impracticable at the time the complaint was filed, the action will not be considered as being based upon the jurisdiction of equity to grant rescission. Consequently, this action cannot be tested by rules applicable to rescission unless the amended complaint shows some basis for recognizing that jurisdiction.
If I correctly understand the second point in plaintiff's brief, it has already been considered and resolved in previous opinions.
Plaintiff next contends that the second or so-called Homestead tract sale to GM can be rescinded even though the contract has been fully executed. GM takes a contrary position. For purposes of my decision I shall assume that the fact that the Homestead sale is fully executed does not in and of itself prevent rescission.
This then brings us to the important point which the Court permitted plaintiff to develop by amendment, viz., should the two pieces of land conveyed by B & O to GM be considered and evaluated as separate transactions for purposes of determining whether rescission of the Homestead sale was impracticable at the time the complaint was filed? To answer this question we have only the pleadings, a stipulation as to certain facts and GM's affidavits. I pause to note that the Court has already ruled that at the time the original complaint was filed it was impracticable to rescind the sale of the so-called Plant Site tract.
I first summarize such allegations of the amended complaint as are pertinent to the "separate transactions" issue. In the latter part of 1944, B & O and GM had discussions and exchanged correspondence contemplating the following: B & O would acquire two tracts of land, one called the "Main Plant Site" consisting of about 131 acres, and the other called the "Homestead Tract", comprising about 12 acres; B & O would convey these tracts to GM, except that the B & O would retain a portion for the installation of yard tracks; B & O would install a water main upon the tracts capable of supplying 1,500,000 gallons daily; in consideration of the foregoing GM would pay $150,000 to B & O.
*335 In August 1945, B & O conveyed 120.5 acres of the "Main Plant Site" to GM for $140,000, retaining the remaining 11 acres for its own use. At the time of this conveyance it was understood between B & O and GM that the B & O would continue its efforts to acquire the Homestead tract, and if successful, would sell it to GM for $10,000; that GM would promptly proceed to erect its automobile assembly plant on the Main Plant Site; that the sale of the "Main Plant Site" was to be independent of B & O's success in acquiring the Homestead tract and of its conveyance to GM.
Upon the conveyance of the Main Plant Site, to GM, the latter erected the automobile assembly plant which was completed in the spring of 1947; thereafter large railroad shipments were made into and out of the plant.
B & O experienced difficulty in acquiring the Homestead tract. On or about June 29, 1948, B & O and GM entered into a "new" agreement by which B & O conveyed to GM, 8 acres of the Homestead tract for $10,000. Since B & O was unable to convey marketable title to such land to GM, the agreement provided that B & O was to indemnify GM against any losses resulting from defects of title and that GM was to erect no substantial structures on the Homestead tract for twenty years; that GM has neither erected any substantial structures nor installed any improvements on the land.
The amended complaint prays, inter alia, that the transactions be rescinded.
The allegations of plaintiff's amended complaint, standing alone, must be construed to aver that the Homestead tract sale was a separate transaction and thus possibly subject to rescission at the date the original complaint was filed. GM's motion for judgment on the pleadings as to this count must therefore be denied because the Court is confined to the pleadings in disposing of such a motion. See Chancery Court Rule 12(c), Del.C.Ann.
I next consider GM's motion for summary judgment. In doing so, I do not pause to summarize GM's answer to the amended complaint because, in deciding such a motion, the factual allegations of the complaint heretofore stated must be assumed to be true unless contrary facts appear in the unchallenged affidavits filed by GM. However, to the extent the facts appearing in GM's unchallenged affidavits are inconsistent with the allegations of the complaint, such facts must be taken to be true. Compare Sparks Co. v. Huber Baking Co., 9 Terry 9, 96 A.2d 456.
What do the GM affidavits show? One affidavit was filed by the man who since 1945 has been plant engineer at the plant built by GM on the so-called Main Plant Site. At the time the original fence was built surrounding the plant, both the Homestead Site and a sizeable area of the Main Plant Site were excluded. When a fence was built in 1949, the Homestead tract was included with most of the remaining GM property. This was done to protect the plant from the theft of parts under cover of darkness.
Paragraphs 5 and 6 of the affidavit are as follows:
"(5) Ever since the completion of the plant near the end of 1946 the `Homestead' tract has always been made use of as protection for the plant property. In addition it is now and for some time past has been used for burning unsaleable paper and other dunnage and unsaleable lumber coming from packing boxes, crates, etc. [By supplemental affidavit he states that based on his best recollection it was so used in 1951]. This burning operation takes place once or twice a week. In the course of time it may well become necessary to build an incinerating plant for the disposal not only of the waste material which is now being burned on the ground on the `Homestead' tract but also to dispose of material which now is being dumped elsewhere. The `Homestead' tract is *336 important for both its present and prospective use because of the desirability that an incinerating operation be carried on as far from manufacturing operations as reasonably possible, and that tract is favorably located with reference to manufacturing operations at the plant for those purposes. An incinerator on the plant property will eventually become a practical necessity.
"(6) As operations in the plant developed since construction was completed late in 1946 it became apparent that the `Homestead' tract was needed and in the future will be more urgently needed for the efficient conduct of operations. Long before the time this suit was instituted, which I am informed was in July 1952, and in fact by the time title to that tract was acquired by General Motors in 1948, the importance of the `Homestead' tract as an integral part of the plant had become a certainty; and that is true at the present time."
The affidavit of the production manager of the plant between 1949 and 1952 states that the Homestead tract was used as stated in the quoted affidavit of the plant manager. He also confirms the quoted paragraph 6 of the same affidavit.
Is the history of the purchase, as well as the position and use of the "Homestead" tract such as to warrant the conclusion that it should be treated as a separate transaction for purposes of determining whether it was practicable to rescind the transaction at the time this action was commenced?
I first consider and take as true the history of the transaction as shown by the documents annexed to GM's affidavits. First is a letter from B & O to GM dated October 14, 1944, in which B & O offered to sell within 90 days about 143 acres less necessary yard track area at a price of approximately $150,000. In the offer it is stated that with respect to an identified 12 acres which included the so-called Homestead tract the offerer understood that GM was agreeable to the granting of "additional time required for clearing the titles of these properties, over and above the 90 day period, provided you have possession of these properties simultaneously with the other properties forming the major portion of the site".
By letter of November 27, 1944, from B & O to GM it was stated, inter alia, that B & O could not commit itself to give a fixed date to surrender possession of the above mentioned 12 acre area.
By letter dated December 1, 1944, from GM to B & O the B & O offer contained in the above mentioned two letters was accepted. I quote the pertinent portions:
"This is to notify you that we hereby accept the offer contained in your letter of October 14, 1944, as revised by Mr. Kummer's letter of November 27, 1944, to convey to us by warranty deed an unencumbered, marketable title, within 90 days from December 1, 1944, to the properties lying South of the Baltimore & Ohio Railroad, East of Centerville and Krebs Road and North of Boxwood Road, near Wilmington, Delaware, embracing about 143 acres less that required for yard tracks necessary to serve our proposed plant, at a total price of approximately $150,000.
"We understand that additional time may be required for clearing the titles to the Negro properties along North, Center and South Streets included in the proposed site but that possession of these properties will be delivered to us within a maximum time of six months from December 1, 1944, and that possession will be delivered to us earlier if possible."
Subsequent developments are best shown by the following recitals in an Agreement executed by B & O and GM and dated June 29, 1948:

*337 "Whereas, in 1944 The Baltimore and Ohio Railroad Company agreed to acquire and convey, for plant site purposes, certain property near Wilmington, Delaware, lying south of the tracks of The Baltimore and Ohio Railroad Company, east of the Centerville-Krebs Road and north of Boxwood Road, comprising approximately one hundred forty-three (143) acres, less that required for railroad purposes; and
"Whereas, by deed dated August 13, 1945, recorded August 24, 1945 in the Recorder's Office at Wilmington, Delaware, Deed Record E, Volume 45, page 579, one hundred twenty and twenty-five hundredths (120.25) acres of said land were conveyed to General Motors Corporation for the sum of One Hundred Forty Thousand Dollars ($140,000.00), leaving to be conveyed approximately eight (8) acres out of what was formerly known as the Homestead Subdivision; and
"Whereas, said eight-acre parcel has not heretofore been conveyed because of impaired title and inability to cure defects; and
"Whereas, notwithstanding the defects in said title, General Motors Corporation now desires to have said eight-acre parcel conveyed to it for the sum of Ten Thousand Dollars ($10,000.00); and
"Whereas, because of the imperfections in title, The Baltimore and Ohio Railroad Company is only willing to convey under the terms and conditions hereinafter set forth; * * *."
The conveyance was made subject to the following condition, among others:
"(2) General Motors Corporation hereby agrees that for a period of twenty (20) years from the date hereof it will not improve the above described parcel of land by erecting any substantial structures thereon, and it is further agreed that if General Motors Corporation erects such structures or conveys the premises to anyone within such period, and such new owner erects substantial structures thereon, this agreement shall be of no further force or effect."
Having stated the legal history and use of the Homestead tract, I now consider plaintiff's contentions. Plaintiff contends that the Homestead tract was obtained by a separate contract. Plaintiff also points out that the agreement of purchase provided that GM would erect no substantial structures on the Homestead tract for twenty years and that in fact no such structures have been erected. These facts, says plaintiff, show that the Homestead transaction could readily be rescinded.
If the Homestead tract was to be viewed as completely isolated from the Plant Site purchase, the facts relied upon by plaintiff would be more persuasive. However, it is clear to me that B & O and GM originally agreed to purchase both tracts as part of one transaction. It is further clear that GM had control and use of these abutting tracts long before this action was commenced. The delay in conveying the Homestead tract was due solely to title troubles. Moreover, even though the Homestead tract was a matter of later agreement, that agreement was executed in 1948, which was long before this action was commenced. But more important, in reality both tracts were purchased as part of one transaction and for one use. In my view they must here be so viewed for purposes of determining whether or not rescission was practicable at the time the action was commenced.
I now turn to a consideration of the use of the Homestead tract. It appears that *338 after the Homestead tract was conveyed to GM it was enclosed with a fence which also embraced most of the rest of the GM property. The map attached to the stipulation shows that the Homestead plot abutted the plant site tract. It is also undisputed that even before the Homestead tract was actually conveyed, GM made a limited use of that property for the protection of the plant property. The same tract was used prior to the commencement of this action to dispose of waste material. Moreover, the potential importance of this area to the long range operation of the plant is a matter which the Court can and does consider as pertinent in evaluating whether or not rescission was practicable at the time the complaint was filed. I think that it must be accepted as a fact, beyond mere opinion, as the affidavit states, that the Homestead tract was important to GM.
When the history of the purchase and use of the Plant Site tract and the Homestead tract are considered in their setting, it is perfectly clear that rescission of the Homestead tract was impracticable at the time the action was commenced. On this premise, as ruled in earlier opinions, plaintiff's action must be viewed as one asserting a monetary claim on behalf of B & O and thus within the concurrent jurisdiction of this Court. When so viewed it is barred by the Delaware Statute of Limitations for the reasons stated in previous opinions herein.
To repeat, this is not a situation where the conditions relied upon as the basis for my conclusion that rescission is impracticable came about after the commencement of the action.
It follows that GM's motion for summary judgment will be granted.
Present order on notice.
NOTES
[1] As hereafter noted, in connection with this defense plaintiff-stockholder of carrier stands in the shoes of the carrier.
[2] I assume at this point in the opinion that the complaint sets forth a legal claim concerning a rebate.
[3] I assume without deciding that an appropriate statute of limitations would be applied by an equity court in this type of action.
[1] If plaintiff feels that this is not a fair evaluation of the complaint an opportunity will be offered to develop this point.